Albert R. MUELLER and Delores J. Mueller, his wife, Plaintiffs-Respondents-Petitioners,

v.

Donald B. BRUNN and Marion F. Brunn, his wife, Defendants,

TOWN OF VERNON, a municipal corporation, Defendant-Appellant.

Supreme Court

*No. 80–1227. Argued November 2, 1981.—Decided January 5, 1982.*

(Also reported in 313 N.W.2d 790.)

For the respondents-petitioners there was a brief and and oral argument by *Leonard W. Schulz* of Big Bend.

For the defendant-appellant there was a brief by *Patrick F. Brown, Steven J. Steinhoff* and *Brown, Phillips & Davis* of Waukesha, and oral argument by *Mr. Steinhoff.*

HEFFERNAN, J.  The plaintiffs, Albert R. Mueller and Delores J. Mueller, his wife, hereinafter plaintiffs, have petitioned for review of a decision of the court of appeals[1] which reversed an order of the trial court and directed that the plaintiffs' action against the Town of Vernon be dismissed.  We reverse the court of appeals.

The plaintiffs, who are property owners in Waukesha county, commenced an action alleging that Donald B. Brunn and Marion F. Brunn, his wife, the vendors of the property purchased by plaintiffs, made material misrepresentations because they stated that they had no knowledge of any defects in respect to the adequacy and quality of the well, while, in fact, plaintiffs allege, the sellers had notice of salt contamination prior to the execution of the real estate contract.

In the some complaint, the plaintiffs also allege a cause of action against the Town of Vernon, the owner of property abutting the land purchased by the plaintiffs from the Brunns.  The claim is that the Town of Vernon negligently stored road salt on the adjacent premises and that this caused the contamination of the plaintiffs' well.

The plaintiffs are residents of the Town of Vernon in Waukesha county.  Originally the action was brought

---

[1] *Mueller v. Brunn,* 101 Wis. 2d 231, 304 N.W.2d 144 (Ct. App. 1981).

in Racine county in the belief that the defendants, Brunns, were residents of that county. Subsequently, upon being informed that the vendors were residents of Walworth county, the plaintiff's consented that the place of trial be changed to Walworth county. The Town of Vernon, which is located in Waukesha county, however, moved for the dismissal of the plaintiffs' complaint for lack of jurisdiction. Inconsistently, however, in its answer it asked for a change of venue to Waukesha county. After a hearing upon the motion, the trial court denied the motion to dismiss.

The Town of Vernon relied upon sec. 801.50(1)(a), Stats.,[2] which requires, subject to the provisions for change of venue, that the proper place of trial of civil actions for an injury to real property is in the county in which "the subject of the action or some part thereof is situated." Sec. 801.51 provides:

> "The county designated in the complaint shall be the place of trial, unless the same be changed as provided in this chapter, except that every action named in s. 801.-50(1) can be commenced only in the county in which the property or some part thereof is situated."

The trial court concluded that this statute, which arguably at least deprived the Walworth County Circuit Court of jurisdiction, was inapplicable, because the action against the Town of Vernon was not *in rem* for relief in respect to the real estate, but rather was an

---

[2] "801.50 **Place of trial.** Except as provided in s. 220.12 and subject to the provisions for change of venue the proper place of trial of civil actions is as follows:

"(1) WHERE SUBJECT OF ACTION SITUATED. Of an action within one of the 4 classes next following, the county in which the subject of the action or some part thereof is situated:

"(a) For the recovery of real property, or of an estate or interest therein, or for the determination in any form of such estate or interest, or for an injury to real property."

action *in personam* for damages. It analogized the action to that in *Fond du Lac Plaza, Inc. v. H.C. Prange Co.*, 47 Wis. 2d 593, 178 N.W.2d 67 (1970). Accordingly, the trial court denied the Town of Vernon's motion for dismissal, concluding that a proper venue for trial was in Walworth county.

The court of appeals granted the Town of Vernon leave to appeal the nonfinal order determining venue. The court of appeals concluded that the trial court erred in failing to dismiss the complaint against the Town of Vernon, because the Walworth County Circuit Court lacked "subject matter jurisdiction." The court of appeals held that the action against the town, in accordance with sec. 801.50 (1) (a), Stats., should have been brought in Waukesha county, the county where the property was located. The court of appeals reversed and remanded to the trial court with directions to dismiss the action against the Town of Vernon. It concluded that the reliance of the trial court on *Fond du Lac Plaza, Inc.*, was misplaced. The court of appeals stated:

"In the present case, the Muellers' action is not one for specific performance. The language in the *Fond du Lac Plaza* case concerning the *in personam* versus *in rem* character of a specific performance action is inapplicable to an action for injury to property. Unlike an action for specific performance, an action for injury to property is *in rem* by nature and is an action which clearly subjects real estate to the jurisdiction of the court. Such an action must be commenced in the county in which the property is located. . . .

". . . The Walworth county circuit court has no subject matter jurisdiction to provide any relief to the Muellers on their claim. . . ." pp. 235-36.

Because of the arguable inconsistency of the court of appeals' decision with the *Fond du Lac Plaza* case, we granted plaintiffs' petition for review.

Although on the basis of language of some of our past cases the statements of the court of appeals are under-

standable, it is now clear that whatever defect may have existed as the result of bringing the case in Walworth county it was not the defect of subject matter jurisdiction. As we stated in *Matter of Guardianship of Eberhardy,* 102 Wis. 2d 539, 307 N.W.2d 881 (1981), subject matter jurisdiction is vested by the constitution in the courts of the State of Wisconsin. No circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever. We recognize, however, that the legislature has the authority to abolish heretofore recognized common law actions (*e.g.,* breach of promise suits) and may set standards for exhaustion of administrative remedies or for primary jurisdiction prior to the proper invocation of the court system's subject matter jurisdiction.

The court of appeals, however, interpreted secs. 801.50 and 801.51, Stats., together and concluded that, because the first statute directs that the proper place of trial of civil actions for an injury to real property is the county in which the subject of the action is situated and because sec. 801.51 on its face appears to state that actions "named in s. 801.50 (1) can be commenced only in the county in which the property or some part thereof is situated," the legislature has denied courts in Walworth county subject matter jurisdiction in respect to injuries to real property in Waukesha county. It is clear, however, from another provision of the same chapter, that this is not correct, because sec. 801.04 (1) provides: ". . . . Nothing in chs. 801 to 847 affects the subject matter jurisdiction of any court of this state."

Thus, whatever disability Walworth County Circuit Court may have which arguably prevents it from proceeding to judgment in a case involving property in Waukesha county, it is not a disability properly denominated as lack of "subject matter jurisdiction." *See*

*Jansen Co. v. Milwaukee Area Dist. Board,* 105 Wis. 2d 1, 10, 312 N.W.2d 813 (1981). The fact, however, that the defect is not one of subject matter jurisdiction does not mean that, under the statute, it was appropriate to proceed to judgment in this case. The *Restatement of Judgments,* para. 7, p. 41, *Comment a,* provides:

"*Comment:*
"*a.* **Requirement of competency of the court.** . . . Although a State has jurisdiction over the person of the defendant, it may not have given to a particular court or it may not have given to any of its courts power to entertain the action. In such a case the court has no 'competency' to render a valid judgment. The court has no power to render a valid judgment, not because the State lacks power but because it has not conferred power upon the court."

Thus, it is apparent that, even where a court lacks only the competency, not jurisdiction, to deal with a particular type of problem, a judgment may be void. *See Restatement of Judgments,* para. 7, p. 41. Typical cases of a court's lack of competency are those set forth in *Restatement of Judgments,* para. 7, *i.e.,* where there is a different level of trial courts and where certain types of action can be entertained only in specialized courts or where a judgment rendered by a justice of the peace is void under the law of the state because justices of the peace are not empowered to deal with the subject matter of the action. Also, there is lack of competency for excess sums where a court has the power to deal with an action but for no more than a designated amount. If a court has the power, *i.e.,* subject matter jurisdiction, to entertain a particular type of action, its judgment is not void even though entertaining it was erroneous and

contrary to the statute. *Wisconsin Public Service Corp. v. Krist,* 104 Wis. 2d 381, 303 N.W.2d 854 (1981).

"Where a statute provides that an action shall be brought in a particular county and it is brought in a different county of the State, it depends upon the interpretation of the statute whether the judgment is void. Ordinarily such a statute is not construed as making the judgment void. The defect is one of venue, not of jurisdiction." *Restatement of Judgments,* para. 7, p. 43.

If a court truly lacks only competency, its judgment is invalid only if the invalidity of the judgment is raised on direct appeal.

"If, however, the court has jurisdiction over the parties and decides that it has competency to render the judgment, the parties may be precluded from collaterally attacking the judgment, on the ground that the question of the competency of the court is res judicata between them." *Restatement of Judgments,* para. 10, pp. 58–9.

In the instant case, of course, the question of the competency of the court to proceed was promptly raised by motion; and hence a judgment, if we were to find the venue to be improper, would have been invalid, but not void for the lack of subject matter jurisdiction of the court but invalid for the lack of competency to proceed to judgment. Whether the court lacks competency or whether it lacks subject matter jurisdiction, as asserted by the court of appeals, is really irrelevant under the state of this record, because the motion to dismiss was timely made. The basic problem remains: Do the statutes, secs. 801.50(1)(a) and 801.51, preclude the trial of this case in Walworth county. We conclude they do not, because the pollution of the Muellers' well does not constitute "injury to real property."

The court of appeals recognized that the basic distinction between local and transitory actions was in the type

of relief sought—that in general, under the old common law rules, actions *in personam* were for the purpose of seeking relief from the person of the defendant and were transitory, while actions *in rem* sought a decree which operated directly on the land and were required to be brought in the county where the land was located. The court of appeals concluded, however, that:

> "Unlike an action for specific performance, an action for injury to property is *in rem* by nature and is an action which clearly subjects real estate to the jurisdiction of the court." 101 Wis. 2d at 235.

██

We believe this statement is incorrect. An action for injury to property is an action for damages and is *in personam*. In the instant case the Muellers' complaint did not put the title to the real estate in controversy, nor was there any intent to subject the real estate itself to the jurisdiction of the court. All that is sought is jurisdiction over the persons of the defendants in order to secure a judgment for damages.

Ehrenzweig and Louisell, *Jurisdiction—State and Federal*, sec. 20, p. 92, state:

> "Actions in rem are local in the sense that they may be brought only at the situs of the res . . . But under an ancient common law doctrine there is also one type of actions in personam which is limited to the situs of a res, namely actions for trespass to land. . . . For several reasons it seems, however, that the rule is likely to lose this status [as mandatory] in the foreseeable future and to become just another facet of the doctrine of forum non conveniens: . . . . Moreover, even where the rule survives it has often been limited to its narrowest confines."

This common law rule, now fossilized in our venue statutes, purporting to eliminate the court's power to act in trespass cases arising beyond the territorial lim-

its of the county, has been criticized from its very inception. Even under the ancient common law, the rule was limited to situations that were denominated as *trespass quare clausum fregit*, that is, direct injury to land. The rule did not encompass trespass on the case. Case is a common law form of action wherein the damages sought are consequential to the tort and not the direct result of the tortious conduct. Trespass on the case is the ancestor of the present day action for negligence where problems of legal and factual cause arise. A very useful comment appearing in *Venue Problems in Wisconsin*, 56 Marquette Law Rev., 1972–73, p. 87, points out that, even at common law before the American Declaration of Independence, there was a recognized distinction:

". . . between local and transitory actions . . . the personal actions of debt, account, case and covenant were no longer tied to the locality where the cause of action arose. . . . This meant that venue could be laid where the defendant was found . . . ." p. 89.

This rationale, which allowed the plaintiff to follow the person of the defendant with his action, was not accepted in actions which the common law "tied to a locality, such as . . . trespass *quare clausum fregit*, replevin, and, in general, actions substantially *in rem* against real estate." p. 89.

Thus, even under the common law, the present action, which is similar to trespass on the case, would be a transitory and not a local action. It is doubtful whether the ancient scrivener of the statutes fully intended to make an action for damages against a tortfeasor conform to an *in rem* form of action, appropriate under circumstances where title to the land was in question.

The seminal American case which adopted the rule was *Livingston v. Jefferson*, 15 Fed. Cases 660, decided by the United States Circuit Court for the District of Virginia in 1811. The suit was between two distinguished

Americans—Edward Livingston and Thomas Jefferson. Livingston was a citizen of New York and Jefferson a citizen of Virginia, and the property involved was owned by Livingston in the City of New Orleans. It was Livingston's contention that the courts of the new United States should not be bound by the ancient rules of the common law and that, because the jurisdiction of the United States courts ran to the borders of the country, it would be appropriate to sue Jefferson in Virginia even though Livingston's damaged property lay within the City of New Orleans. The action complained of was clearly *trespass quare clausum fregit* and was so denominated in the opinion. It was complained that Jefferson, as President of the United States, by his agents, broke the close *(clausum fregit)* and

". . . did break, cut in pieces, and utterly destroy, and 200,000 cart loads of earth, (sand and clay,) of the soil of the said close, with spades, &c., did dig and raise . . . . the soil of the said close was greatly injured, and the said plaintiff wholly lost the said parcel . . . ." pp. 660–61.

The court was a distinguished one consisting of John Tyler, whose son became president of the United States, and John Marshall, the Chief Justice sitting as a circuit justice. Both of them, in separate opinions, forcefully stated the lack of any reasonable basis of holding that a trespass to land was a local action.

Judge Tyler pointed out that to hold that the trespass was a local action could result in a failure of justice. He also acknowledged that an action for damages against the trespasser was *in personam* and not *in rem*. He agreed that an action *in personam* "should follow a person wherever he might be found, and there rise in judgment against him." P. 662. Nevertheless, he stated that there were reasons to hold that *trespass quare clausum fregit* was a local action. He stated:

"[T]he title and bounds of land may come in question; and who so proper to decide on them as one's neighbors, who are so much better acquainted with each other's lines, and everything else which may lead to a fair decision? In an action of this kind, it may be necessary to direct a survey and lay down the pretensions of both parties; for, the defendant has a right to show in himself, a better title, and defend himself on that title." P. 662.

Judge Tyler recognized that the "great luminary [Lord Mansfield] of the judicial department of Great Britain" (p. 662) held that trespass to real property was a transitory action, but that decision had been overruled. After itemizing the reasons why it was illogical to hold that an action for damages to real property was a local action, he nevertheless stated:

"Nor was it for them [the British judges]—nor is it for us, to be over scrupulous in inquiring for the reasons on which the opinion was originally given, why an action of trespass should be deemed a local action." P. 662.

Chief Justice Marshall, in his separate opinion, acknowledged that, even under the English law and practice, jurisdiction could lie anywhere within the realm, because the appellate courts in England had the power to direct a jury anywhere in the kingdom. He analogized the trespass situation to contracts respecting land and pointed out that all the problems in respect to title and boundaries reviewed by Judge Tyler were as likely to arise in such a case as in a trespass and yet it was clearly conceded that contract actions respecting land were transitory in nature. He stated that he had not discerned any reason which satisfied him that it was appropriate to hold that trespass to land was a local action while a contract in respect to land was a transitory action.

Citing Lord Mansfield in the case of *Mostyn v. Fabrigas,* 1 Cowp. 166, Chief Justice Marshall stated that the true distinction was between proceedings which are *in*

*rem* "in which the effect of a judgment cannot be had, unless the thing lie within the reach of the court, and proceedings against the person where damages only are demanded." P. 664. It is clear that Chief Justice Marshall accepted that distinction and, had he not felt constrained by precedent, would have held that trespass, being an *in personam* action for damages and not an action *in rem*, was a transitory and not a local action. Chief Justice Marshall recognized that ruling that trespass to real property was a local action might give rise to a "defect of justice." However, he acknowledged precedent and stated:

"Other judges have felt the weight of this argument, and have struggled ineffectually against the distinction, which produces the inconvenience of a clear right without a remedy. I must submit to it." P. 665.

Hence, it is apparent that, although injuries to real property are recognized as being local actions, both British and American judges have concluded that the rule is unreasonable; and, as Ehrenzweig and Louisell, *supra* p. 92, pointed out, it "has often been limited to its narrowest confines."

Even from the date of the first reported Wisconsin case on this general subject, *Burrall v. Eames*, 5 Wis. 260 (1856), this court has struggled with the question of whether a suit for specific performance of a contract to sell land was a local or transitory action. The court in *Burrall* recognized that the suit was "partly *in personam* and partly *in rem*" (p. 263), and that, therefore, whether it was a local or transitory contract depended more upon the nature of the remedy the court ordered than upon the nature of the cause of action. The court stated:

"The court may enforce the contract, either by operating upon the person to compel a conveyance, or may pass the title of the land by decree." P. 263.

More recent Wisconsin cases have also struggled with the question of whether actions concerning lands were local or transitory. In *State ex rel. Hammer v. Williams*, 209 Wis. 541, 245 N.W. 663 (1932), the court was concerned with a foreclosure action which had been brought to judgment in a county other than that in which the real estate was situate. Under the statutes similar to those with which we are concerned in the instant case, the foreclosure judgment was without "jurisdiction" and void. The trial court, upon discovering this, substituted the judgment of foreclosure with a judgment for the recovery of damages on the note. The Wisconsin Supreme Court again recognized that an action for damages was for *in personam* type of relief and was not barred from entry because of the distinctions which required an *in rem* remedy, *i.e.*, foreclosure to be brought in the county where the land was located.

*State v. Conway*, 26 Wis. 2d 410, 132 N.W.2d 539 (1965), was an action for specific performance to enforce an option to purchase real estate. The defendant contended that the contract, and not the land, was the subject of the action and, accordingly, the suit could be brought in the county where the defendants resided. This court agreed, primarily upon the basis that the action was not one involving title or the possession of the land, but was intended to operate upon the person of the defendant. Accordingly, the action for specific performance of the contract was a transitory not a local action and was properly commenced at the defendant's residence and not at the situs of the land.

*Fond du Lac Plaza, Inc. v. H.C. Prange Co.*, 47 Wis. 2d 593, 178 N.W.2d 67 (1970), followed the rationale of *Conway*. The *Plaza* case extracted and applied the principal *ratio decidendi* of *Conway* that the major factor in determining the venue of an action for specific performance of a contract is dependent upon the particular re-

lief sought—that where the relief is *in personam* operating upon the conscience of the defendant, the action is transitory and may be brought anywhere in the state where personal jurisdiction can properly be acquired. If, however, a decree is sought to operate directly upon the land, *i.e.*, there is a demand for the court to transfer the property, the action is *in rem* and is local.

These cases are typical of numerous others throughout the United States in which courts wherever possible have consistently construed actions concerning real estate to be transitory rather than local.

Clark, *Code Pleading* (hornbook series, 2d ed.), discusses the problems created by the inflexibility of this vestigial carry-over of venue based on the ancient common law form of action *trespass quare clausum fregit*. He states at page 124:

"Certain actions, particularly those dealing with realty, are *local*, and must be tried at the place where is located the subject matter of the suit. Others are *transitory*, and may be tried wherever it is possible to obtain jurisdiction over the person of the defendant. A claim for wrongfully cutting the plaintiffs' timber may take the form of a claim for trespass to the land, ordinarily a local action. Or it may take the form of one for conversion of the trees, a *transitory* action. Here, too, all that the court needs is fair and reasonable notice from the pleadings. Certain harsh rulings in this connection have been substantially overruled by later decisions. Moreover, the present trend is in favor of making all money damage actions transitory."

An example of a case in which the Wisconsin court construed the pleadings in such a manner as to avoid the harsh rule applying to local actions is found in *Swift, Administrator v. James*, 50 Wis. 540, 7 N.W. 656 (1880). In that case an action was brought in the Winnebago County Circuit Court alleging a trespass in the cutting down and taking of trees on the plaintiff's prop-

erty in Michigan. The trial court, following the accepted rule, held that the case could not be entertained in Wisconsin, because the action was local and the proper venue was in Michigan, where the trespass occurred. On appeal, the Wisconsin Supreme Court reversed. Looking at the complaint, it concluded that, in addition to stating a cause of action for *trespass quare clausum fregit*, it stated an action for trover for the conversion of the lumber, for which damages are recoverable. Accordingly, the court reversed and remanded for further proceedings, concluding that a transitory action had been stated also and that the lawsuit could proceed in Wisconsin.

This problem, which is basically a conflict of laws problem, has been faced squarely in the Restatement 2d, *Conflict of Laws*, para. 87, p. 260. The preferred statement of the law as set forth therein is:

"A State may entertain an action that seeks to recover compensation for a trespass upon or harm done to land in another state."

It is noteworthy that the Restatement 2d does not attempt to characterize a trespass action as something else to justify venue. It boldly acknowledges that the rule no longer has any basis in fact or logic. It points out, however, that a number of courts continue to refuse to entertain actions for trespass to lands in other states. The ancient rationale on which they act is explained in Comment *a,* para. 86, pp. 260–61:

"This fact may be explained only in the light of history. The action of trespass developed in England at a time when jurymen were supposed to have personal knowledge of the facts, and when consequently all cases had to be tried in the neighborhood of the occurrence. Originally there was nothing peculiar about the rule that an action for trespass to land could be brought only . . . where the land was located. Such actions were

treated no differently than the rest. What is surprising is that the rule remained in effect long after jurors were no longer required, or even permitted, to have personal knowledge of the facts of the case.

"The courts' refusal to entertain actions for trespass to foreign land frequently led to injustice. It meant that the plaintiff was remediless if he could not obtain jurisdiction over the defendant in the state where the land was located. Nor was the rule supported by any countervailing considerations. An attempted justification, sometimes advanced, is that an action for trespass to land is likely to involve questions of title. But the courts are entirely willing to pass upon such questions in other kinds of proceedings, such as when the action is for specific performance of a contract to convey foreign land. Nor could there be any jurisdictional impediment to the entertainment of such an action which seeks only the recovery of money damages from the defendant. Such an action does not seek to affect title to foreign land, as would a bill to quiet title, nor does it require official action in the state where the land lies, as would a suit in which the plaintiff asks that the defendant be removed from the land he himself placed in possession (see Comment *d*). There is no reason why an action for trespass to land should be treated differently than any other action for the recovery of money damages."

Accordingly, we are satisfied that there is good precedent based upon the leading American jurisprudential authorities dating back to Chief Justice Marshall which dictates, as a matter of policy, that courts should avoid the Draconian rule of a creed outworn—that suits affecting land are local in nature. The trend of our legal history shows that wherever possible courts have restricted the applicability of the local injury-local action rule. It is apparent that Chief Justice Marshall wished to do so but felt that he could not in view of clear common law precedent that damage to the Livingston Batture in New Orleans was *trespass quare clausum fregit.* The actual damage to the land by digging up by Jeffer-

son's agents could only be classified as that kind of trespass, and it was undeniably a trespass to real property.

In the instant case the claim of the plaintiffs against the Town of Vernon is for the contamination of the Muellers' well water as the result of the seepage from the Town of Vernon's storage of road salt, allegedly stored in a negligent manner on adjacent property. It is apparent that the circumstances alleged in this complaint are not those typically attributed to *trespass quare clausum fregit.* The damages are not direct as in trespass, but are consequential as in trespass on the case, which, under some interpretations of ancient law, was a transitory and not a local action. In addition, and most importantly—and the fact upon which we hinge our decision—is that the pollution of water as a consequence of another's negligence does not fit neatly into the time-honored slot of injury to real property. By some rationales it could be argued that damage to real property includes damage to any of those "interests in real property" as defined in sec. 840.01, Stats. To so argue is not unreasonable, but because the clear tendency of the law and the rationale of courts which have considered this question is to limit local actions rather than to expand them, we decline to hold, in the context of the venue statutes, that water pollution constitutes an "injury to real property."

Although the question of whether the pollution or contamination of water is an "injury to real property" has never arisen in Wisconsin and has arisen but rarely in other jurisdictions, the question has been addressed in North Carolina and Ohio. An action for damages for the pollution of a stream causing damage to the plaintiff has been held to be transitory and not an action for injury to real property within the contemplation of a statute fixing venue as being of a local nature only. *See Harris*

*Clay Co. v. Carolina China Clay Co.*, 203 N.C. 12, 164 S.E. 341 (1932), and *Snyder v. Clough*, 71 Ohio App. 440, 50 N.E.2d 384 (1942). Accordingly, because the type of tort alleged here does not fall clearly within the provisions of sec. 801.50(1)(a), Stats., we decline to denominate it as an injury to real property, and the action properly lies in the venue of Walworth county, where the defendants Brunn reside and where the action is now pending. Accordingly, we conclude that the court of appeals erred when it found that there was no "subject matter jurisdiction" for the action in Walworth county and it erred when it ordered the dismissal of the complaint.

We recognize, however, that, were the factual allegations properly viewed by the court of appeals as involving a traditional injury to real estate, *trespass quare clausum fregit*, that the court in Walworth county would have lacked the competency to proceed to judgment. However, a defect of competency, as pointed out *supra* in this opinion, is not jurisdictional. Accordingly, we would conclude that an action, improperly brought in a county under the provisions of sec. 801.50(1)(a), Stats., is not a total nullity. We would conclude that the jurisdiction of the court system was properly invoked and it would then be within the authority of the circuit court to transfer the cause to the county in which the real property lies. Upon transfer we would deem the action properly "commenced," although the running of the statute of limitations would be tolled at the time personal jurisdiction is acquired and the complaint filed in any court which had subject matter jurisdiction although that venue was improper under the statute.

Insofar as this case is concerned, however, the upshot of our decision is that the court of appeals' decision is reversed and the cause remanded for further proceed-

ings in the trial court in accordance with that court's original order.

It should be emphasized, as is evident from our discussion of the injury-to-land venue statute, that this common law fixation upon the necessity for local venue has long been passé. What is sought in the instant case is damages against the tortfeasor. It is appropriate and in accordance with modern concepts of jurisprudence that a suit can be commenced anywhere in the state where jurisdiction can be acquired, and the proper venue should be determined by the trial court in accordance with the principles of *forum non conveniens* and the need to do justice between the parties. Judge Tyler and Chief Justice Marshall decried the common law rule one hundred seventy years ago, but we have engrafted it upon our statutes. It is time that the legislature revise these archaic Wisconsin venue statutes and bring them into conformity with reality.[3]

*By the Court.*—Decision reversed, with directions that the cause be remanded to the trial court for further proceedings consistent with this opinion.

---

[3] "[T]he ends of justice would be better promoted by giving the courts a free rein to balance the relative conveniences of all concerned in a lawsuit; then, if the result of such a balancing test so indicates, those courts should be encouraged to apply the doctrine of *forum non conveniens* with increased liberality. Obviously, such flexibility precludes the use of the old, rigid approach to venue. However, the reasons for and the feasibility of such an approach have been superseded by the complex face often presented by litigation today. A frank recognition of the real justification for venue statutes requires such a flexible approach, rather than the superimposition of more patchwork on the existing crazy quilt." Sortor, Comment, *Venue Problems in Wisconsin*, 56 Marquette Law Rev 1972–73, 87, 117.