IN the INTEREST OF L.M.C., a Person Under the Age of 18: Carolyn P. SCHOENWALD, as Guardian ad Litem for L.M.C., Appellant,

v.

M.C., and L.C., Respondents. †

IN the INTEREST OF H.L.C., a Person Under the Age of 18: Carolyn P. SCHOENWALD, as Guardian ad Litem for H.L.C., Appellant,

v.

M.C., and L.C., Respondents. †

IN the INTEREST OF E.S.C., a Person Under the Age of 18: Carolyn P. SCHOENWALD, as Guardian ad Litem for E.S.C., Appellant,

v.

M.C., and L.C., Respondents. †

Court of Appeals

*Nos. 88–0521, 88–0522, 88–0523. Submitted on briefs July 12, 1988.—Decided July 12, 1988.*

(Also reported in 430 N.W.2d 352.)

---

† Petition to review denied.

378

For the appellants the cause was submitted on the briefs of *Carolyn P. Schoenwald,* of Madison.

For the respondent, M.C., the cause was submitted on the brief of *Richard J. Auerbach* and *Auerbach & Porter,* of Madison.

For the respondent, L.C., the cause was submitted on the brief of *Charles Bennett Vetzner,* assistant state public defender.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J.   The guardian ad litem for each of three children has appealed from an order dismissing petitions to extend the dispositional order as to each child entered in Child in Need of Protection or Services proceedings (CHIPS). The issues are (1) whether previous extensions of dispositional orders are invalid because the dispositional orders had ex-

pired before the extensions were granted and (2) whether the trial court nevertheless is competent to grant the petitions to extend because the court's competency was not challenged in previous proceedings. We conclude that one extension is invalid, but because the competency of the court to enter that extension was not timely raised in previous proceedings, the parents are precluded from challenging the court's competency in this proceeding.

We summarize our construction of the pertinent statutes and case law as follows:

(1) An order extending a dispositional order under secs. 48.355 and 48.365, Stats., is effective if orally rendered before termination of the dispositional order even if not reduced to writing until after termination of the order;

(2) While an extension order is effective when rendered before termination of the dispositional order, it extends the order for one year from the termination date of the dispositional order or from the termination date of an extension for thirty days or less under sec. 48.365(6), Stats., not from the date the extension order is rendered;

(3) A trial court cannot temporarily extend a dispositional order beyond thirty days past its termination date to hold a hearing on an extension petition by consent or by continuing the extension hearing under sec. 48.315(1)(b), Stats;

(4) Objections to the trial court's failure to abide by the time limits for extending dispositional orders under secs. 48.355 and 48.365, Stats., must be raised in the trial court at the time the extension is under consideration or by timely appeal from the order granting the extension. Failure to do so precludes a party from asserting such objections in subsequent litigation.

We begin with the statutory and case law background. The juvenile court has exclusive original jurisdiction over a child alleged to be in need of protection or services. Sec. 48.13, Stats. The custody of a child adjudged to be in such need may be transferred to an agency. Sec. 48.345. Transfer is effected by a dispositional order entered pursuant to sec. 48.355.

A dispositional order entered under sec. 48.355, Stats., before the child reaches the age of majority terminates at the end of one year from entry of the order unless the judge specifies a shorter time, and extensions also terminate at the end of one year unless a shorter time is ordered. Sec. 48.355(4). A dispositional order may be extended only as provided in sec. 48.365. Sec. 48.365(1). Extension orders cannot exceed one year. Sec. 48.365(5). "If a request to extend a dispositional order is made prior to the termination of the order, but the court is unable to conduct a hearing on the request prior to the termination date, the court may extend the order for a period of not more than 30 days." Sec. 48.365(6).

The provisions of sec. 48.365, Stats., governing extension of dispositional orders apply to juveniles adjudicated delinquent and to children adjudicated in need of protection or services. We therefore may look to the case law in both types of proceedings for guidance.

■■■

*In Interest of S.D.R.*, 109 Wis. 2d 567, 326 N.W.2d 762 (1982), involved the extension of a dispositional order in a juvenile delinquency proceeding. The *S.D.R.* court noted that dispositional orders "terminate at the end of one year *unless* the order is extended by the court for up to 30 days pending a plenary hearing, or for up to a year following such a hearing." *Id.* at

575–76, 326 N.W.2d at 766 (emphasis in original). A temporary extension under sec. 48.365(6), Stats., "can only be granted when a request for such extension is filed *before* the expiration of the dispositional order. ... Further, the extension granted under this provision can not be for more than 30 days and the full hearing must be held within that period." *Id.* at 575, 326 N.W.2d at 766 (emphasis in original). "[U]nder no circumstances may the dispositional order be temporarily extended for more than 30 days. The court must hear and decide the extension request within 30 days of the termination of the order." *Id.* at 577, 326 N.W.2d at 767.

The factual history of this case is undisputed. L.C. and M.C. are the parents of L.M.C., H.L.C. and E.S.C. In December 1983 the oldest child told school officials that his father had hit him. The parents admitted to the police that the oldest child had been beaten about every other day. CHIPS petitions were filed for each child in December 1983, and the children were removed from the home and placed in foster care. Amended petitions were filed in late December 1983, providing additional information regarding alleged physical and sexual abuse. The petitions were amended further to allege that the children were victims of physical abuse only. The court accepted the parents' pleas of no contest to the amended CHIPS petitions and found the children in need of protection or services.

The court signed a single dispositional order on April 12, 1984 placing the children under the protective supervision of the Dane County Department of Social Services for one year. "An order is entered when it is filed in the office of the clerk of court." Sec. 807.11(2), Stats. The order bears the clerk of court's

date stamp of April 27, 1984. The order was entered on April 27, 1984. The order is effective for one year from the date of entry. Sec. 48.355(4), Stats.

On March 5, 1985, the court signed an order reciting that it had been advised that the department would be petitioning for an extension which would be contested. The court extended the dispositional orders for thirty days from April 12, 1985.[1] Extension petitions were filed on April 11, 1985, and heard on April 25, 1985, when the parents pled no contest to the allegations. The propriety of this procedure is challenged.

At the hearing the court orally ordered one-year extensions. By June 20, 1985 the court had signed one-year extension orders as to each child. The court signed amended orders on July 18, 1985. None of the orders specified the date from which the one-year extensions ran. That date is one of the issues we resolve.

On March 20, 1986, petitions to extend the dispositional orders were again filed. A hearing was held on April 17, 1986, at which the court orally ordered that the matter be scheduled for an extension hearing on May 20, 1986 and extended supervision for thirty days. We infer that the court's intent was to extend supervision for thirty days from April 27 to May 27, 1986.[2]

---

[1]The court apparently assumed that the order expired on April 12, 1985, because the original order was signed April 12, 1984. We conclude the order did not expire until April 27, 1985 because the original order was entered April 27, 1984. We later conclude that the 1985 thirty-day extension was unnecessary. *See* discussion of 1985 extension. The date of entry is significant only as to the original dispositional order. See footnote 3.

[2]The court unaccountably signed an order at the conclusion of the hearing extending supervision for "a period of 30 days from

The parents and their attorneys and the guardian ad litem were present at the May 20, 1986 hearing. The court's calendar was such that the matter could not be concluded that day. The parents by their attorneys did not object to continuing the extension hearing to June 18, 1986, and to extending supervision to June 18, 1986. On May 21, 1986, the court signed an order so providing. The propriety of the extension to June 18, 1986 is at issue.

At the June 18, 1986 hearing, the parties agreed to a one-year extension, with the current placements. Other matters were contested. The court indicated it would order the extension, including the current placements, but did not issue its findings orally. During the balance of the hearing the parties litigated the remaining issues. On July 16, 1986, the court signed and entered orders extending supervision for the children for one year, without specifying when the year began. That date and the court's subject matter jurisdiction or competency to exercise it are at issue.

On May 26, 1987, petitions to extend the dispositional orders for an additional one year were filed. On June 18, 1987 a hearing was held, at which pursuant to the parties' stipulation, the court signed an order extending supervision for thirty days and continued the hearing to July 14, 1987. On June 29, 1987, the parents moved to dismiss the petitions, contending the court had lost jurisdiction. At the July 14, 1987 hearing, the trial court orally extended the disposi-

this date," April 17, 1986. We infer that the extension runs from the prior termination date, April 27, 1986. The transcript of the April 17, 1986 hearing convinces us that this was the court's intent, and the court could not have intended to hold the extension hearing on May 20, 1986 if the thirty-day extension would have expired on May 17, 1986.

tional orders for one year. On August 10, 1987 the court signed one order nunc pro tunc to July 14, 1987, extending supervision for one year for the children. The order was entered on August 17, 1987. By August 31, 1987, each parent had filed a notice of intent to pursue postconviction relief.

On October 15, 1987, the court rescinded its July order which had extended supervision for one year and dismissed the petitions for extensions. It stayed this order pending appeal. The court concluded it had lost subject matter jurisdiction due to various gaps in the proceedings.

The court analyzed the jurisdiction issue as follows: On April 25, 1985 the court had subject matter jurisdiction by virtue of the one-year dispositional orders as to each child. That jurisdiction would expire at the end of the year, unless extended. The following year, the court extended each order for thirty days to May 25, 1986, and then continued a hearing on the petitions for extensions to June 18, 1986. The court then purported to extend the dispositional orders for another year. If the one year ran from May 25, 1986, then the petitions for extension filed on May 26, 1987 were one day late, and the court lost subject matter jurisdiction. If the one-year extension ran from the court's oral order on June 18, 1986, a "gap" existed between May 25, 1986 and June 18, 1986. If it ran from the written order of July 16, 1986, a "gap" existed between May 25, 1986, and July 16, 1986. The court lost subject matter jurisdiction when any "gap" in supervision began.

1.  *1985 Extension*

We reject the parents' contention that because in 1985 the thirty-day extension was ordered before the

petitions for extension were filed, the original one-year dispositions expired April 12, 1985. Section 48.365(6), Stats., requires only that the request for an extension be made before the dispositional order terminates. The request was made before termination occurred. The thirty-day extension was therefore valid, but because the one-year extension was ordered on April 25, 1985, before the dispositional order terminated, the thirty-day extension was unnecessary.

That the orders granting the first extensions were signed after the dispositional order had terminated is immaterial. Section 48.365(2m), Stats., provides that an extension order shall be issued under sec. 48.355, and sec. 48.355(2)(a) provides that the order shall be in writing. However, nothing in the statutes compels the conclusion that an extension order is not effective until it is reduced to writing.

On the contrary, the Children's Code "sets up a system of annual review guaranteeing procedural due process at least within one year and 30 days after the original dispositional order is entered." *S.D.R.*, 109 Wis. 2d at 576, 326 N.W.2d at 766. If that review occurs and an oral decision is rendered before termination of the order, the due process and statutory concerns have been satisfied, even if the order is not signed until after the year-plus-thirty-day period has expired.

Practical considerations require this conclusion. Some extension hearings may not be completed until shortly before a disposition terminates. It may be impractical or even impossible for an overworked and understaffed court to prepare and sign the extension order until after the dispositional order has terminated. "[T]he legislature recognized the problems of

scheduling the plenary extension hearing into busy court calendars prior to the expiration of the order. Thus, through sec. 48.365(6), Stats., the legislature attempted to effectively and *practically* implement the annual review . . . ." *S.D.R.,* 109 Wis. 2d at 576, 326 N.W.2d at 767 (emphasis added). It would subvert the legislative intent to hold that an extension order signed after the termination date but on the basis of a timely oral decision is invalid.

We hold that an extension order signed after the dispositional order has terminated is valid if the order is based on a timely oral decision in an extension hearing held before termination. The newly-granted extension is effective even if granted orally and runs from the date the disposition would otherwise terminate, in this case April 27, 1985.[3]

We reject the argument that the one-year extension runs from the original termination date of the dispositional order even if that order has been extended for up to thirty days. Section 48.365(6), Stats., permits the trial court to extend the dispositional order for up to thirty days to hold a hearing on a request to extend the dispositional order, and may then under sec. 48.365(5), order an extension for a "specified length of time not to exceed one year."

If an extension ordered on the last day of a thirty-day extension under sec. 48.365(6), Stats., must run from the original termination date of the dispositional order, then the extension order could be no longer

[3]Our holding regarding the effectiveness of an oral grant applies only to extensions, not original orders. An original dispositional order is "effective for a time up to one year after its entry unless the judge specifies a shorter period of time." Sec. 48.355(4), Stats.

than eleven months. This would be inconsistent with sec. 48.365(5) and *S.D.R.*, which held that the Children's Code "sets up a system of annual review guaranteeing procedural due process at least within one year and 30 days after the original dispositional order is entered." 109 Wis. 2d at 576, 326 N.W.2d at 766.

We conclude that the extension order runs for up to one year from the termination date of the dispositional order or from the termination date of an extension for thirty days or less under sec. 48.365(6), even though this means a dispositional order may last for up to one year and thirty days.

2. *1986 Extension*

a. *Timeliness*

Unless the one-year extensions orally ordered on April 25, 1985 were extended for thirty days, the termination date for the orders was April 27, 1986. A timely petition was filed to extend the April 27, 1986 termination date. The thirty-day extensions from April 27, 1986 to May 27, 1986 complied with sec. 48.365(6), Stats.

However, the second extension to June 18, 1986 was ineffective, even though ordered because of the court's calendar and without objection. This conclusion is compelled by the mandates in sec. 48.355(4), Stats., that dispositional orders "terminate at the end of one year" and in sec. 48.365(1) that "[n]o order under s. 48.355 may be extended except as provided in this section." "[U]nder no circumstances may the dispositional order be temporarily extended for more than 30 days." *S.D.R.*, 109 Wis. 2d at 577, 326 N.W.2d at 767.

The guardian ad litem nevertheless contends that the second extension was a continuance statutorily

authorized to preserve the status quo pending the later scheduled hearing. The guardian ad litem, who had consented to the continuance on behalf of the children, relies on sec. 48.315(1), Stats., which provides in relevant part:

> The following time periods shall be excluded in computing time requirements which this chapter:
> . . .
> (b) Any period of delay resulting from a continuance granted at the request of or with the consent of the child and counsel.

■ Statutory construction is a question of law which we decide without deference to the trial court's decision. *De Bruin v. State,* 140 Wis. 2d 631, 635, 412 N.W.2d 130, 131 (Ct. App. 1987). We must reject the guardian ad litem's argument. Perhaps, as the guardian ad litem argues, it is inconsistent with the focus of the Children's Code on child welfare to subject that welfare to the mercy of a court's calendar. However, we cannot allow the general language of sec. 48.315(1)(b), Stats., relating to delays to override the specific language concerning extensions set forth in secs. 48.355(4) and 48.365(6), absent an indication that this was the legislature's intent. *State v. Amato,* 126 Wis. 2d 212, 217, 376 N.W.2d 75, 78 (Ct. App. 1985). We discern no such intent. Moreover, *S.D.R.* held that under no circumstances may be a dispositional order be temporarily extended for more than thirty days. 109 Wis. 2d at 577, 326 N.W.2d at 767. We conclude that no temporary extension of a dispositional order to hold a hearing, even by reason of a continuance, is tolerated beyond the single thirty-day extension provided in sec. 48.365(6).

We further conclude that the dispositional order as to each child terminated on May 27, 1986. The one-year extension orders signed on July 16, 1986 therefore failed to comply with the time limits of secs. 48.355 and 48.365, Stats.

Consequently, the trial court correctly held that because the April 25, 1985, extension order terminated on May 27, 1986, a gap existed between that date and July 16, 1986 when the court extended the dispositional orders for one year. The court assumed, however, that because of the gap, the court lost subject subject matter jurisdiction. We disagree.

b. *Subject Matter Jurisdiction and Competency*

The circuit courts possess "plenary" jurisdiction by virtue of Wis. Const. art. VII, sec. 8, and that jurisdiction, in the sense of judicial power to act, does not depend on legislative authorization. *In Matter of Guardianship of Eberhardy,* 102 Wis. 2d 539, 551, 307 N.W.2d 881, 886 (1981). "No circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." *Mueller v. Brunn,* 105 Wis. 2d 171, 176, 313 N.W.2d 790, 792 (1982).

A circuit court in this state may nevertheless lack "competency" to act because the state has not conferred power upon the court. *Id.* at 177, 313 N.W.2d at 793. For that reason, we refer to a trial court's having "lost competency to exercise jurisdiction," *Brookhouse v. State Farm Mut. Ins.,* 130 Wis. 2d 166, 171, 387 N.W.2d 82, 84 (Ct. App. 1986), or to the court's "lack of competency to proceed to judgment." *Shopper Advertiser v. Department to Rev.,* 117 Wis. 2d 223, 230, 344 N.W.2d 115, 118 (1984), or competency "to render judgment," *In re Marriage of Hengel v. Hengel,* 120 Wis. 2d 522, 524, 355 N.W.2d 846, 847 (Ct. App. 1984).

Before the *Eberhardy* court noted the plenary subject matter jurisdiction of the circuit courts, mandatory statutory time provisions were regarded as affecting a court's subject matter jurisdiction and therefore could not be waived. *See, e.g., State v. Rosen,* 72 Wis. 2d 200, 209, 240 N.W.2d 168, 172 (1976).

Mandatory statutory time provisions now affect the competency of a circuit court to proceed. *See Jansen Co. v. Milwaukee Area Dist. Board,* 105 Wis. 2d 1, 10, 312 N.W.2d 813, 817 (1981) (trial court's decision to grant motion after verdict "void as the court lost competency to exercise its jurisdiction" after sec. 805.16, Stats., time limit expired); *Brookhouse,* 130 Wis. 2d at 168, 387 N.W.2d at 83 (trial court "lost competency to exercise jurisdiction" to decide late-filed motions after verdict), *approved in Hartford Ins. Co. v. Wales,* 138 Wis. 2d 508, 521–22, 406 N.W.2d 426, 431–32 (1987).

The *Mueller* court relied partly on *Restatement of Judgments* sec. 7 (1942), which used the term "competency" to describe a court's power to render a valid judgment. *Mueller,* 105 Wis. 2d at 177, 313 N.W.2d at 793. *Restatement (Second) of Judgments* sec. 11 (1982) is the counterpart of sec. 7 of the first *Restatement.* Section 11 uses the term "subject matter jurisdiction" instead of "competency," to reflect "common legal usage in this country." *Restatement (Second) of Judgments* sec. 11, Reporter's Notes at 114.

Common legal usage elsewhere in this country does not reflect the situation in Wisconsin. Whatever the subject matter jurisdiction of courts in other states, the circuit courts of this state possess plenary subject matter jurisdiction by virtue of the Wisconsin Constitution. *Eberhardy,* 102 Wis. 2d at 551, 307 N.W.2d at 886. "Competency" reasonably describes

the lesser power to exercise subject matter jurisdiction. Because of the relationship between the concepts, when lack of competency to exercise jurisdiction in one proceeding is claimed to have deprived a circuit court of competency in another, it is reasonable to look at the *Restatement* to determine when a lack of "subject matter jurisdiction" in one proceeding can be raised in another.

Mandatory statutory restrictions on how or when a circuit court may exercise its jurisdiction may cause it only to lose competency to proceed:[4]

> If a court truly lacks only competency, its judgment is invalid only if the invalidity of the judgment is raised on direct appeal.
> "If, however, the court has jurisdiction over the parties and decides that it has competency to render the judgment, the parties may be precluded from collaterally attacking the judgment, on the ground that the question of the competency of the court is res judicata between them." *Restatement of Judgments,* para. 10 [comment a], pp. 58–9.

*Mueller,* 105 Wis. 2d at 178, 313 N.W.2d at 793.[5]

---

[4]*In Matter of Guardianship of N.N.,* 140 Wis. 2d 64, 65, 409 N.W.2d 388, 389 (Ct. App. 1987), held that a trial court lacks jurisdiction to hold the final hearing on a petition for protective placement after the expiration of the thirty-day limitation in sec. 55.06(11)(c), Stats. This case is distinguishable because N.N. timely challenged the defect by appealing from the order placing her under general guardianship and imposing protective placement.

[5]*Restatement of Judgments* sec. 10 (1942) provides:

> (1) Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of res judicata is

In *Mueller,* the competency question had been raised in the trial court. For that reason, the supreme court had no reason to refer to *Restatement of Judgments* sec. 10, comment c:

> The rule stated in this Section is applicable not only where the question of the jurisdiction of the court over the subject matter is actually litigated, but also where it is not so litigated, the court and the parties assuming that it has jurisdiction. The rule is not applicable if there is no litigation of any issue, even though the defendant by his appearance or otherwise is subject to the jurisdiction of the court. It is applicable, however, if issues are litigated in which the jurisdiction of the court is assumed though not contested.

*Restatement (Second) of Judgments* sec. 12 is the counterpart of sec. 10 of the first *Restatement,* relied on by the *Mueller* court.[6] Comment d to sec. 12 states in part:

outweighed by the policy against permitting the court to act beyond its jurisdiction.

(2) Among the factors appropriate to be considered in determining that collateral attack should be permitted are that

(a)   the lack of jurisdiction over the subject matter was clear;

(b)   the determination as to jurisdiction depended upon a question of law rather than of fact;

(c)   the court was one of limited and not of general jurisdiction;

(d)   the question of jurisdiction was not actually litigated;

(e)   the policy against the court's acting beyond its jurisdiction is strong.

[6]*Restatement (Second) of Judgments* sec. 12 (1982), provides:

When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:

Even if the issue of subject matter jurisdiction has not been raised and determined, the judgment after becoming final should ordinarily be treated as wholly valid if the controversy has been litigated in any other respect. The principle to be applied in this situation is essentially that of claim preclusion, particularly the proposition that a judgment should be treated rs resolving not only all issues actually litigated but all issues that might have been litigated.

*Restatement (Second) of Judgments.*

Comment d to sec. 12 concludes that if parties did not litigate the issue of jurisdiction but had the opportunity to do so, then the question is:

whether the public interest in observance of the particular jurisdictional rule is sufficiently strong to permit a possibly superfluous vindication of the rule by a litigant who is undeserving of the accompanying benefit that will redound to him. The public interest is of that strength only if the tribunal's excess of authority was plain or has seriously disturbed the distribution of governmental powers or has infringed a fundamental constitutional protection.

(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

*Id.*

*Restatement (Second) of Judgments* sec. 12 (1982), as explained in comment d, applies. The parties had ample opportunity to litigate the trial court's competency to proceed in 1986, both before the trial court at the time the 1986 extension was under consideration, and in the court of appeals by timely appeal. When the April 1986 petition for an extension was heard on May 20, 1986, the parties never questioned the court's competency to proceed and did not object to a continuance of the hearing and extension of supervision to June 18, 1986. Litigation continued at the rescheduled hearing, without objection. The parents never appealed from the order signed on July 16, 1986.[7]

The trial court's lack of competency to grant an extension beyond one thirty-day extension under sec. 48.365(6), Stats., and to proceed at the June 18, 1986 hearing was plain enough, in view of *S.D.R.* It was not, however, plain to the court at that time, or to the parents, each of whom had counsel. The court's lack of competency was first raised almost a year later in June 1987 when the parents moved to dismiss the pending petitions for extensions. Whether the parents are precluded from raising the competency question at this time will not affect the distribution of governmental powers. The parents did not object to the extension beyond May 27, 1986, and therefore cannot contend that any fundamental constitutional protections to which they are entitled have been infringed.

[7]An order granting or denying the extension of a dispositional order pursuant to sec. 48.355, Stats., is appealable as of right, since it disposes of the entire matter in litigation as to one or more of the parties. Sec. 808.03(1), Stats. An appeal by the parents would have to be initiated within the time period specified in sec. (Rule) 809.30. Sec. 808.04(3).

The public interest in protecting adoptions strongly supports a ruling that parents are precluded from litigating a trial court's competency to grant a dispositional extension in a prior CHIPS proceeding except in the proceeding granting the extension or in an appeal from the order in such a proceeding. CHIPS orders frequently provide the grounds for involuntary termination of parental rights, such as abandonment under sec. 48.415(1), Stats., or a continuing need of protection or services under sec. 48.415(2), or child abuse under sec. 48.415(5). The complexities of this case show how easily a trial court may trip and fall when extending dispositional orders.

Adoptions should be free from the possibility that a CHIPS extension granted many years ago was invalid and a termination of parental rights was therefore improperly granted because a gap of a few days intervened between a dispositional order's termination and its extension. Adoptive parents and children should be protected from that risk when the defect was not timely raised in the trial court or the court of appeals and could have been. The principles laid down in *Mueller* and *Restatement (Second) of Judgment* sec. 12 (1982), eliminate that risk.

We conclude that because the parents could have litigated the trial court's competency to extend the dispositional order in 1986 and failed to do so either before the trial court at that time or by an appeal, they are precluded from raising the question in this litigation.

The trial court's order vacating its order entered August 10, 1987 must be reversed. The effect of our reversal is to reinstate the August 10 order based on

396

the July 14, 1987 oral one-year extension of the dispositional order as to each child.[8]

*By the Court.*—Order reversed.

---

[8]Since the parents cannot challenge the 1986 order because of the "gap" between May 27 and July 16, 1986, the one-year extension commenced July 16, 1986, and would have expired July 16, 1987. The last extension order was orally rendered July 14, 1987.