# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP580 |
| COMPLETE TITLE: | Russell Adams,<br>　　　Plaintiff-Appellant-Petitioner,<br>　　v.<br>Northland Equipment Company, Inc., Cincinnati Insurance<br>Company and The League of Wisconsin Municipalities Mutual<br>Insurance Company,<br>　　　Defendants-Respondents. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
347 Wis. 2d 549, 830 N.W.2d 722
(Ct. App. 2013 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 22, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 4, 2014 |

| | | |
|---|---|---|
| SOURCE OF APPEAL: | | |
| | COURT: | Circuit |
| | COUNTY: | Rock |
| | JUDGE: | James Welker |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | BRADLEY, J., ABRAHAMSON, C.J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

　　For the plaintiff-appellant-petitioner, there were briefs by *Thomas E. Greenwald*, Rockford, and oral argument by *Thomas E. Greenwald*.

　　For the defendants-respondents, Northland Equipment Company and Cincinnati Insurance Company, there was a brief by *James M. Ryan*, *Dustin T. Woehl*, and *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee, and oral argument by *James M. Ryan*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2012AP580
(L.C. No.  2010CV2126)

STATE OF WISCONSIN           :        IN SUPREME COURT

Russell Adams,

        Plaintiff-Appellant-Petitioner,

        v.

Northland Equipment Company, Inc., Cincinnati Insurance Company and The League of Wisconsin Municipalities Mutual Insurance Company,

        Defendants-Respondents.

**FILED**

**JUL 22, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1     PATIENCE DRAKE ROGGENSACK, J.   We review a decision of the court of appeals[1] affirming an order of the Rock County Circuit Court[2] that compelled plaintiff Russell Adams to accept a settlement offer from defendant Northland Equipment Company, Inc. that Adams' employer's worker's compensation insurer, The League of Wisconsin Municipalities Mutual Insurance Company (LWMMIC), chose to accept.

---

[1] Adams v. Northland Equip. Co., No. 2012AP580, unpublished slip op. (Wis. Ct. App. Mar. 7, 2013).

[2] The Honorable James Welker presided.

¶2 Adams sued Northland and its insurer, Cincinnati Insurance Company, pursuant to Wis. Stat. § 102.29(1) (2011-12)[3] for personal injuries Adams sustained while plowing snow for his employer, the Village of Fontana.[4] Northland offered $200,000 to settle Adams' claim. LWMMIC accepted Northland's offer and moved the circuit court to compel Adams to accept it as well. The circuit court granted LWMMIC's motion.

¶3 Adams contends that the circuit court erred because a worker's compensation insurer cannot compel an employee to accept settlement of a third party tort claim. Adams reasons that Wis. Stat. § 102.29(1) cannot be interpreted to permit the circuit court to compel settlement because such an interpretation would violate his right to a jury trial, which Article I, Section 5 of the Wisconsin Constitution secures. He also contends that the circuit court's order violates procedural due process and is the product of an erroneous exercise of discretion because, among other things, the circuit court did not conduct an evidentiary hearing.

¶4 We conclude that a circuit court may compel an employee to accept settlement of the claim the legislature created in Wis. Stat. § 102.29(1). In such a claim, both the employee and the worker's compensation insurer share the right to sue third parties; the employee and the worker's compensation

---

[3] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

[4] LWMMIC was named as a defendant, but its interest was that of a plaintiff pursuant to Wis. Stat. § 102.29(1).

insurer have an equal voice in the prosecution of the claim; recovery from the claim is apportioned in the manner described in § 102.29(1)(b); and the circuit court is empowered to resolve any disputes arising between the employee and the worker's compensation insurer during the prosecution of their claim, including those disputes involving settlement.

¶5 We also conclude that our interpretation of Wis. Stat. § 102.29(1) does not violate Adams' right to a jury trial because the claim § 102.29(1) creates is not the counterpart of a cause of action at law recognized at the time of the adoption of the Wisconsin Constitution. We further conclude that the circuit court's authority to compel an employee to accept settlement does not violate procedural due process because judicial resolution of disputes is part of the statutory claim. Lastly, we conclude that the circuit court appropriately exercised its discretion by defining the dispute, taking stock of the relative positions of the parties and considering matters that impacted the fairness of the settlement. Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND

¶6 This case concerns personal injuries Adams sustained during the course of his employment with the Village of Fontana. On February 21, 2009, Adams was plowing the driveway to the Village Hall when the blade of his plow struck the lip of a sidewalk. Adams claims that when the plow came into contact with the lip, the truck stopped suddenly and threw him up into the ceiling of the cab of the truck, "causing excessive

3

compression forces to be applied to his spine." The truck then continued past the end of the driveway, crossed the street, and struck a curb, where it came to a final stop and another plow operator discovered it. Adams was not wearing a seat belt at the time of the accident.

¶7 The plow was equipped with springs that were designed to absorb some of the shock when the plow experienced a certain amount of resistance. The springs were to reduce the shock by allowing the bottom of the plow to rotate toward the truck, or "trip." In order to function correctly, the springs needed to be tight enough to plow snow, but loose enough to trip when the plow hit fixed obstacles.

¶8 Before Adams' accident, the Village had been experiencing problems with the plow Adams used in that it was tripping too easily when pushing heavy snow. The Village brought the plow to Northland for repair.

¶9 Northland explained that the two Henderson brand springs on the plow were worn out and in need of replacement. Northland did not have the exact Henderson brand replacement springs for the plow, and could not obtain them before an expected snowstorm. Therefore, Northland and the Village decided to replace the Henderson brand springs with Western brand springs that Northland had on hand. The replacement springs worked without incident for the year and a half prior to Adams' accident.

¶10 As a result of the accident, Adams suffered permanent injury to his spine. He brought personal injury claims against

4

Northland and its insurer, alleging negligence in the repair of the plow and strict liability for the malfunction of the replacement springs. LWMMIC, which had paid Adams $148,332 in worker's compensation benefits for medical expenses and temporary total and permanent partial disability as of the date of the motion to compel, participated in Adams' suit pursuant to the claim created by Wis. Stat. § 102.29(1).

¶11 Northland and Cincinnati Insurance moved for summary judgment, arguing that Adams could not prove negligence or causation. They asserted that the deposition testimony of Adams' expert, Robert Wozniak, showed that Wozniak could not "establish[] a standard for a safe tension level in the snow plow's springs" and therefore, Adams could not prove that "this accident would not have happened at different tensions."

¶12 At the summary judgment motion hearing, the circuit court pressed Adams' attorney, Thomas Greenwald, on this issue asking, "So [Northland] put on [springs] that ha[d] more tension. Now what's the evidence going to be that that was negligence?"

¶13 Greenwald responded that Wozniak was "going to testify that that created an unreasonable risk of harm by adding that much spring, requiring that much tension, and that unreasonable risk of harm was that the plow would not trip when required to trip and that that unreasonable risk of harm is what caused this event to occur." As to the basis for this testimony, Greenwald explained that Wozniak's opinions were part of a memo Greenwald

5

prepared for Wozniak and "asked at his deposition are these [Wozniak's] opinions, and [Wozniak said] yes."

¶14 After explaining that Greenwald would not be allowed to prove Adams' case at trial by "present[ing Wozniak] with some legal gobbledy gook and ask[ing] him to confirm it," the circuit court denied defendant's summary judgment motion. The court explained its decision as follows:

> I think Mr. Greenwald is spitting into an awfully strong wind here, and it may be that even this case will get dismissed at the end of the plaintiff's case, I don't know, but I do think that there is at least that minimum quantity of opinion by an engineer that says that this is an accident that was caused by springs that were too tight.
>
> How a jury——I'm sure [Wozniak is] going to be asked at trial, 'Well, how tight would have been tight enough?' And I——it will be interesting to see what his answer [i]s. But I think that this is not a proper case that should be decided on summary judgment, and for that reason the motion is denied.

¶15 Four days after the circuit court denied Northland's summary judgment motion, LWMMIC received a $200,000 settlement offer. LWMMIC's attorney contacted Greenwald, who informed LWMMIC that Adams would not accept the offer.

¶16 LWMMIC then attempted to negotiate resolution with Adams. It proposed that in exchange for relinquishing control of the litigation to Adams, Adams release LWMMIC from liability for future worker's compensation payments. After Adams rejected LWMMIC's proposal, LWMMIC unilaterally accepted the settlement offer and moved the circuit court to compel Adams to accept it as well.

¶17 The circuit court received submissions from both parties and held a hearing on the motion. LWMMIC explained that it wished to accept the settlement offer because of the risks of a defense verdict at trial, citing concerns about "comparative fault, seatbelt negligence, and damages." LWMMIC also said that it thought Adams' case had "not improved" since the summary judgment hearing because Robert Krenz, an expert witness for the defense, tested the plow and found that it "actually does trip[,] even at just 2 ½ m.p.h. with very little movement of the driver."

¶18 Adams responded that: (1) a court has no authority to compel an employee to accept settlement; (2) if a court had such authority, an evidentiary hearing to evaluate the merits of the case would be necessary before compelling settlement; and (3) the settlement offer in the present case is "grossly inadequate" and "not in the best interest" of Adams.

¶19 The circuit court granted LWMMIC's motion to compel settlement. It concluded that it had the authority to do so under Dalka v. American Family Mutual Insurance Co., 2011 WI App 90, 334 Wis. 2d 686, 799 N.W.2d 923; that an evidentiary hearing was unnecessary; and that the risk of a finding of no liability at trial exceeded the possibility of a verdict that exceeded the settlement offer.

¶20 Adams appealed and the court of appeals affirmed. As with the circuit court, the court of appeals concluded that Dalka controlled the issue of authority to compel settlement. As to Adams' argument about the evidentiary hearing, it

7

concluded that due process did not require a "mini-trial" of Adams' claims because when we affirmed an order compelling a compensation insurer to accept settlement in Bergren v. Staples, 263 Wis. 477, 57 N.W.2d 714 (1953), we did not require a mini-trial. Dalka, 334 Wis. 2d 686, ¶12. Lastly, it concluded that the circuit court appropriately exercised its discretion because it inquired into the nature and strength of the case, assessed the risk of a no liability jury verdict, and came to a logical conclusion. We affirm the decision of the court of appeals.

## II. DISCUSSION

### A. Standard of Review

¶21 This case requires us to interpret and apply portions of Wis. Stat. § 102.29. Statutory interpretation and application are questions of law for our independent review, although we benefit from the analyses of the court of appeals and circuit court. State v. Novy, 2013 WI 23, ¶21, 346 Wis. 2d 289, 827 N.W.2d 610.

¶22 Whether a claim made pursuant to Wis. Stat. § 102.29(1) includes the right to a jury trial such that compelling an employee to accept settlement violates the employee's right to a jury trial under Article I, Section 5 of the Wisconsin Constitution is also a question of law for our independent review. State v. Schweda, 2007 WI 100, ¶12, 303 Wis. 2d 353, 736 N.W.2d 49; Vill. Food & Liquor Mart v. H & S Petroleum, Inc., 2002 WI 92, ¶7, 254 Wis. 2d 478, 647 N.W.2d 177.

¶23 Whether a party has been denied procedural due process is yet another question of law for our independent review. State v. Wood, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63. And finally, we review a circuit court's decision to exercise the authority granted to it under Wis. Stat. § 102.29(1) to resolve disputes in the prosecution of a § 102.29(1) claim under an erroneous exercise of discretion standard. See Bergren, 263 Wis. at 485.

### B. Worker's Compensation Principles

¶24 "Worker's Compensation is a legislatively enacted compromise designed to bring employers and employees together in a mutually beneficial scheme of guaranteeing benefits in the event of work-related injury and disease." Nelson v. Rothering, 174 Wis. 2d 296, 302, 496 N.W.2d 87 (1993). The major goal of worker's compensation is to "provid[e], in the most efficient, most dignified, and most certain form, financial and medical benefits for the victims of work-connected injuries." 1 Lex K. Larson, Larson's Workers' Compensation Law § 1.03[2], at 1-5 (2012).

¶25 By enacting worker's compensation, "the legislature intended to impose upon employers an absolute liability, regardless of fault; and in return for this burden, intended to grant employers immunity from all tort liability on account of injuries to employees." Guse v. A. O. Smith Corp., 260 Wis. 403, 406-7, 51 N.W.2d 24 (1952). By entering into an employment relationship, then, the employer and employee make it part of

9

their relationship to resolve work-related injury disputes within the statutory worker's compensation framework.

¶26 While this statutory scheme provides an employer with near immunity in tort, negligent third parties do not enjoy the same benefit. An employee, employer and the payer of worker's compensation all may sue a third party in tort under Wis. Stat. § 102.29(1). Nelson, 174 Wis. 2d at 300; § 102.29(1).

¶27 The distribution of proceeds from a Wis. Stat. § 102.29 third party claim "gives effect to the original compromise underlying the Worker's Compensation Act by specifying what it determined to be a reasonable apportionment of proceeds between the parties involved," notwithstanding what the common law would have provided. Nelson, 174 Wis. 2d at 303. Stated otherwise, third party claims brought within the scope of § 102.29 are governed by the statutory scheme of worker's compensation, not by common law. See Mulder v. Acme-Cleveland Corp., 95 Wis. 2d 173, 177-78, 290 N.W.2d 276 (1980).

¶28 We also note that worker's compensation alters more than just the common law rights of an employer and employee. For instance, we have construed the worker's compensation statute as preventing a third party tortfeasor from seeking contribution from a negligent employer, "even though the employer was substantially more at fault than the third party." Id. at 177. We permitted this harsh result for the third party who, unlike the employer and employee, gains nothing from the worker's compensation statutes because "worker's compensation

laws constitute an all-pervasive legislative scheme." Id. at 180.

C. Interpretation of Wis. Stat. § 102.29(1)

¶29 We begin our interpretation of Wis. Stat. § 102.29(1) with the language of the statute, through which the legislature expressed the statute's meaning. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶20, 309 Wis. 2d 541, 749 N.W.2d 581; Wis. Indus. Energy Group, Inc. v. Pub. Serv. Comm'n of Wis., 2012 WI 89, ¶15, 342 Wis. 2d 576, 819 N.W.2d 240. "If the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659).

¶30 We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. Because "[c]ontext is important to meaning," we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole." Id., ¶46. We also review statutory history and consult our own prior decisions that examined the same statute as part of our plain meaning analysis. See Richards, 309 Wis. 2d 541, ¶22 ("statutory history is part of a plain meaning analysis"); State v. Soto, 2012 WI 93, ¶20, 343 Wis. 2d 43, 817 N.W.2d 848 ("when engaging in statutory interpretation, we are assisted by prior decisions that have examined the relevant statutes").

11

¶31 Wisconsin Stat. § 102.29(1) provides in relevant part:

(a) The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employee shall not affect the right of the employee . . . to make claim or maintain an action in tort against any other party for such injury or death, hereinafter referred to as a 3rd party; nor shall the making of a claim by any such person against a 3rd party for damages . . . affect the right of the injured employee or the employee's dependents to recover compensation. An employer or compensation insurer that has paid or is obligated to pay a lawful claim under this chapter shall have the same right to make claim or maintain an action in tort against any other party for such injury or death. . . .

(b) . . . Each shall have an equal voice in the prosecution of the claim, and any disputes arising shall be passed upon by the court before whom the case is pending, and if no action is pending, then by a court of record or by the department.

¶32 Adams relies heavily on the first sentence of the statute, reading it as providing an employee with an unfettered right "to make claim or maintain an action in tort" against a third party. As to the language providing the compensation insurer with "the same right" and "an equal voice in the prosecution" thereof, Adams says that language is ineffective to negate the "guarantee" in the first sentence. The same holds true, according to Adams, for the language providing for judicial resolution of disputes. He says it does not say that a circuit court, in resolving disputes, can in any way limit the employee's right that the first sentence grants.

¶33 We disagree with Adams. The third party claim set out in Wis. Stat. § 102.29 differs from a personal injury claim

12

under common law because of the nature of the claim the legislature created, which we discuss below.

## 1. Shared claim

¶34 Reading the statute as a whole, we conclude that the plain language of Wis. Stat. § 102.29(1) shows that the claim against a third party is a shared claim. In the case before us, it is shared between Adams and the compensation insurer, LWMMIC. Section 102.29(1) provides that an employee and a compensation insurer have "the same right to make claim" and "an equal voice in the prosecution of the claim." The common, ordinary, and accepted meaning of these words plainly demonstrates that one claimant is not favored over the other.

¶35 The first sentence of the statute does not alter the shared nature of the claim that the statute plainly creates. Statutory history also shows how the legislature developed the shared claim of Wis. Stat. § 102.29.

¶36 For example, in 1911, making a claim for worker's compensation greatly altered the employee's ability to file a tort claim against a third party because when a worker's compensation claim was made, it "operate[d] as an [employee's] assignment of any cause of action in tort" to the employer. Wis. Stat. ch. 110a, § 2394-25 (1911). In 1913, the legislature amended the statute somewhat and added a provision that gave an injured employee a choice about whether to accept worker's compensation or seek relief for his injuries from a third party. The relevant statute in 1913 provided that by making a claim

13

against a third party, an employee waived any claim for worker's compensation from the employer. Ch. 110a, § 2394-252. (1913).

¶37 We interpret the first sentence of Wis. Stat. § 102.29(1) as establishing that, unlike previous versions of the law, an employee is able to pursue a claim in tort against a third party while maintaining a claim for worker's compensation benefits. However, the claim created in § 102.29 is a shared claim. That is, the employee shares the right to make such a claim with the payer of worker's compensation benefits, generally the compensation insurer. In such a claim, the employee and the compensation insurer have an "equal voice" in the claim's prosecution. Our interpretation harmonizes the statute as a whole, giving effect to every word, and is consistent with the statutory history underlying § 102.29. See State v. Gilbert, 2012 WI 72, ¶39, 342 Wis. 2d 82, 816 N.W.2d 215 (in order to avoid an absurd result, "we must interpret the statute . . . in a way that harmonizes the provisions of the statute and gives effect to every word").

¶38 The statutory directive that the right to bring and prosecute third party tort claims is shared leads us to the conclusion that Wis. Stat. § 102.29 created a new type of claim the nature of which is controlled by the statute, not by common law. Sharing the right to bring suit with another party necessarily alters the nature of the common law claim. See generally Schweda, 303 Wis. 2d 353, ¶103 (Prosser, J., concurring in part, dissenting in part) (illustrating the

14

principle that claims often are defined, at least in part, by who may bring them).

¶39 We begin with the decision to file a lawsuit. An employee's decision to sue for work-related injuries under Wis. Stat. § 102.29(1)(a) is fundamentally different than it would be absent the statute because the employee would not have to give the compensation insurer the "opportunity to join in the making of such claim." The employee would be able to make choices at the beginning of the lawsuit, such as the timing of filing the lawsuit, the venue in which to file the lawsuit, and whom to name as defendants, without regard to the compensation insurer. See Antony L. Ryan, Principles of Forum Selection, 103 W. Va. L. Rev. 167, 168 (2000) ("plaintiff's forum-selection privilege is axiomatic to the common-law tradition"). In contrast, § 102.29(1)(a) imposes an obligation on both the employee and compensation insurer to give the other notice of their actions so that both can participate.

¶40 Furthermore, the shared nature of this third party claim is such that when an employee declines to assert a third party claim, a compensation insurer can sue for damages that are personal to the employee, such as those for pain and suffering, without joining the employee. Threshermens Mut. Ins. Co. v. Page, 217 Wis. 2d 451, 462, 577 N.W.2d 335 (1998).

2. Division of proceeds

¶41 The proceeds of a third party claim do not belong to the injured employee. Rather, if the Wis. Stat. § 102.29(1) third party claim succeeds, § 102.29(1)(b)1.-3. directs how the

15

proceeds must be apportioned between the persons entitled to bring the claim. This is a significant departure from the common law because the statute's remedy provisions "supersede[] the employee's [common law] right to be 'made whole.'" Id. at 462. Therefore, rather than retaining the entire amount of any recovery for himself or herself, an employee must share that recovery according to the statutory formula. § 102.29(1)(b)1.-3. An employee also may be made to bear, by deduction from the damages awarded, some of the compensation insurer's costs of collection, including attorney fees. § 102.29(1)(b)1. and (1)(c). Furthermore, we have repeatedly held that the statutory distribution of proceeds scheme is not an embodiment of the common law principle of subrogation. Bergren, 263 Wis. at 482; Threshermens, 217 Wis. 2d at 480. Rather, it is a part of the claim created by § 102.29.

### 3. Judicial resolution of disputes

¶42 Wisconsin Stat. § 102.29 also requires that disputes between those who are bringing § 102.29 claims be resolved by the circuit court. However, Adams argues that a compensation insurer cannot compel acceptance of a settlement, wherein he makes at least an implied argument that settlement is not a "dispute" under § 102.29(1). We briefly explain why we reach the opposite conclusion, beginning again with the plain language of the statute.

¶43 After providing that an employee and compensation insurer have an "equal voice" in the prosecution of their claim, Wis. Stat. § 102.29(1)(b) provides that "any disputes arising

16

shall be passed upon by the court before whom the case is pending." By using the term "any," the legislature chose language that does not limit the type of disputes on which a circuit court must pass. Additionally, our decision in Bergren, in which we held that an employee can compel a compensation insurer to accept a disputed settlement, would seem to foreclose the possibility that differing opinions about whether to accept settlement is not a "dispute" within the meaning of § 102.29(1), as Adams contends. Bergren, 263 Wis. at 483.

¶44 We also note that although, as the circuit court stated, Wis. Stat. § 102.29(1) does not provide a great deal of guidance on the criteria to be used in settling disputes, the statute's mandatory language plainly states that the circuit court is empowered to do so. The statutory provision, "any disputes arising shall be passed upon by the court before whom the case is pending," is broadly stated, but that does not create an ambiguity in the statute's meaning. See generally Phillips v. Parmelee, 2013 WI 105, ¶¶22-23, 351 Wis. 2d 758, 840 N.W.2d 713 (concluding that the phrase, "any loss rising out of," is broadly stated but not ambiguous).

¶45 Having concluded that the plain language of Wis. Stat. § 102.29(1) establishes the nature of the third party claim for a worker's injury that includes broad authority for the circuit court to settle disputes, we turn to Adams' claim that the circuit court's authority cannot be so broad as to require him to accept a settlement offer because to do so would violate his

constitutional right to a jury trial, which is preserved by Article I, Section 5 of the Wisconsin Constitution.

### D. Jury Trial

¶46 Adams correctly notes that when given alternative statutory interpretations, we will select the interpretation that results in a constitutionally sufficient statute. Am. Family Mut. Ins. Co. v. DOR, 222 Wis. 2d 650, 667, 586 N.W.2d 872 (1998); Madison Metro. Sewerage Dist. v. DNR, 63 Wis. 2d 175, 185, 216 N.W.2d 533 (1974). Adams then argues that we should not interpret Wis. Stat. § 102.29(1) in a way that would allow a circuit court to compel an employee to accept settlement because that would violate the employee's constitutional right to a jury trial preserved by Article I, Section 5 of the Wisconsin Constitution.

¶47 At the outset, we note that we are not presented with a choice of two reasonable constructions of Wis. Stat. § 102.29(1) because the language of the statute is not ambiguous. Rather, we evaluate Adams' argument both as an alternative justification to our plain meaning interpretation and because Adams' arguments seem to include a contention that the circuit court order violates not only Article I, Section 5 of the Wisconsin Constitution, but also § 102.29(1).

¶48 Article I, Section 5 of the Wisconsin Constitution provides as follows:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases

18

in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

¶49 This provision does not accord all claims a jury trial. Historically, we have applied its protection only to civil cases, whereas the jury protection in criminal cases flows from Article 1, Section 7. Schweda, 303 Wis. 2d 353, ¶17; Dane Cnty. v. McGrew, 2005 WI 130, ¶13, 285 Wis. 2d 519, 699 N.W.2d 890; Bennett v. State, 57 Wis. 69, 74, 14 N.W. 912 (1883). In civil cases, we have interpreted Section 5 to mean that the right to a jury trial is preserved for a statutory claim if (1) the statute codified a cause of action that existed in 1848 when Wisconsin's Constitution was adopted; and (2) the cause of action was an action at law rather than in equity. Schweda, 303 Wis. 2d 353, ¶19; Vill. Food, 254 Wis. 2d 478, ¶16.

### 1. Village Food test

¶50 The test for whether the constitutional right to a jury trial attaches to a statutory claim is set out in Village Food:

[A] party has a constitutional right to have a statutory claim tried to a jury when: (1) the cause of action created by the statute existed, was known, or recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848; and (2) the action was regarded as at law in 1848.

Vill. Food, 254 Wis. 2d 478, ¶16.

¶51 While there need not be "specific identity" between the statutory claim and a cause of action in 1848, the party asserting a constitutional right to a jury trial must prove that

19

the two claims differ only slightly. McGrew, 285 Wis. 2d 519, ¶21. Put another way, the cause of action in 1848 must be "essentially [a] counterpart" to the statutory claim in order for Section 5's jury trial protection to apply. Id. (quoting Vill. Food, 254 Wis. 2d 478, ¶28) (alteration in McGrew).

¶52 Village Food describes by example the degree of similarity between a statutory claim and a cause of action that existed in 1848 that one must demonstrate when asserting a constitutional right to a jury trial. The defendant in Village Food was accused of violating certain provisions of the Unfair Sales Act, Wis. Stat. § 100.30. Vill. Food, 254 Wis. 2d 478, ¶3. We began our discussion by identifying the purpose of § 100.30 as preventing "retailers, distributors, and wholesalers of certain types of goods (namely alcohol, tobacco products, and motor vehicle fuel) from selling their merchandise at an artificially low price in order to attract patronage and thereby cause harm to competing businesses and to consumers of those products." Id., ¶18. We then examined the mechanism by which the statute achieved this goal, a minimum markup formula. Id., ¶19. We also considered the remedies available under the Unfair Sales Act and the parties who could bring an action to enforce the Act's provisions. Id., ¶¶20-21.

¶53 After examining the statutory claim, we proceeded to evaluate the sources of law the defendant identified in support of its argument that a cause of action counterpart existed in 1848. Based on the descriptions in Sir William Blackstone's Commentaries on the Laws of England, we concluded that certain

20

public trade offenses, "forestalling the market, regrating, and engrossing" were "of the same 'nature'" as the case before us. Id., ¶27. Because these public trade offenses were legal and not equitable in nature in 1848, we concluded that the defendant had a right to a jury trial secured by Article I, Section 5 of the Wisconsin Constitution. Id., ¶33.

¶54 Our later decisions in McGrew and Schweda cautioned litigants that vague similarities, such as an analogous class of actions or shared "doctrinal roots," are not enough under Village Food. McGrew, 285 Wis. 2d 519, ¶20; Schweda, 303 Wis. 2d 353, ¶34. In McGrew, we compared the speed limit in Wis. Stat. § 346.57(4)(h) to the cause of action for common law nuisance in 1848. We concluded that the statute was not the counterpart of common law nuisance because "the class of actions categorized as 'nuisances' [were] simply too broad to be analogized to a speeding violation." McGrew, 285 Wis. 2d 519, ¶25. Similarly in Schweda, we concluded that nuisance law was too sprawling a concept to constitute a counterpart to certain environmental regulations. Schweda, 303 Wis. 2d 353, ¶¶32-34.

### 2. Village Food application

¶55 Within this legal context, we evaluate whether the claim Adams asserts under Wis. Stat. § 102.29 accords him a constitutional right to a jury trial. We begin by noting that although Adams asserts a constitutional right to a jury trial that precludes requiring him to settle a § 102.29(1) claim, he fails to discuss the Village Food test. Rather than undertaking the sort of analysis our decisions in Village Food, McGrew and

21

Schweda conclude is necessary, Adams states in a conclusory fashion:

> The right to seek compensation for the wrongs committed by Northland and its employees is a right going back to the early English common law. It was initially referred to as "trespass on the case." The Law of Torts, Dan B. Dobbs, West Group, 2000, Section 14, p. 26. It clearly was a right known and recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848.

¶56 Adams' assertion does not constitute a meaningful comparison of the claim created in Wis. Stat. § 102.29(1) to a trespass on the case or to any other cause of action that existed in 1848. Instead, stating his contention in this fashion implies that it is sufficient to note that "[a] negligence action for damages is an action at law and is encompassed by the constitutional jury guaranty." Windsor Square Homeowners Ass'n v. Citation Homes, 62 Cal. Rptr. 2d 818, 820 (Cal. Ct. App. 1997).[5] Adopting Adams' contention, which is unaccompanied by analysis, would "render the Village Food test a nullity because 'present causes of action of all sorts assessed under this test will . . . have to be compared [only] generally . . . in order to invoke the constitutional protection to a trial by jury.'" Schweda, 303 Wis. 2d 353, ¶40 (quoting Vill.

---

[5] California, like Wisconsin and 46 other states, provides for a state constitutional right to a jury trial in civil cases using language "to the effect that the right shall 'remain inviolate.'" State v. Schweda, 2007 WI 100, ¶89, 303 Wis. 2d 353, 736 N.W.2d 49 (Prosser, J., concurring in part, dissenting in part).

22

Food, 254 Wis. 2d 478, ¶46 (Wilcox, J., concurring in part, dissenting in part)).

¶57 In regard to Adams' assertion, we note that under the ancient common law, actions that we would categorize as negligence claims were sometimes brought as trespass on the case. Mueller v. Brunn, 105 Wis. 2d 171, 180, 313 N.W.2d 790 (1982) (explaining that "[t]respass on the case is the ancestor of the present day action for negligence where problems of legal and factual cause arise."). At common law, an injured party is entitled to bring a claim against a tortfeasor for injuries that party sustained due to the tortfeasor's negligence. See Nichols v. Progressive N. Ins. Co., 2008 WI 20, ¶¶11-12, 308 Wis. 2d 17, 746 N.W.2d 220 (explaining the elements of common law negligence and some of the common law rules for such a claim). A common law negligence claim belongs to the injured party or his estate. See Sampson v. Laskin, 66 Wis. 2d 318, 224 N.W.2d 594 (1975) (which arose out of personal injuries to two men, one of whom died, causing his estate to own the claim).

¶58 The claim created by Wis. Stat. § 102.29(1) is not the counterpart of a common law claim maintained to compensate an injured person for his injuries. Rather, by contrast, a § 102.29(1) claim furthers the comprehensive economic regulations that worker's compensation has put in place. As we have explained, "[w]orker's compensation laws are basically economic regulations by which the legislature, as a matter of public policy, has balanced competing societal interests." Mulder, 95 Wis. 2d at 180. The remedies prescribed for a

23

§ 102.29(1) claim wherein the injured employee shares the statutory claim demonstrate part of those economic regulations. This includes the worker's compensation payer's right to reimbursement, even when the employer was at fault for the employee's injury. Id. at 178-79.

¶59 There are numerous examples of the legislature's comprehensive scheme in this third party statutory claim. First, the third party claim is shared with the payer of worker's compensation, Wis. Stat. § 102.29(1)(a); second, the claim accords the person with whom the claim is shared an "equal voice" in bringing the claim and in its prosecution, id.; third, the parties must give notice to one another so both parties can participate, id.; fourth, proceeds received from the claim are apportioned according to a statutory formula wherein the injured party has no right to all that is recovered, § 102.29(1)(b); fifth, statutory apportionment of recovered damages may preclude an injured party from being made whole, Threshermens, 217 Wis. 2d at 462; and sixth, disputes that arise during the prosecution of the claim between the parties entitled to bring a third party claim are resolved by the circuit court, § 102.29(1)(a); Bergren, 263 Wis. at 483 ("where two claimants cannot agree as to the proper prosecution of a claim, then the court can pass upon that dispute, without a jury trial").

¶60 Because an employee's right to sue a third party under Wis. Stat. § 102.29(1) is part of a statutory scheme that creates a statutory claim, abrogates common law remedies and

24

provides a required distribution scheme,[6] the legislature was well within its authority to define and limit the employee's claim in such a way that an employee could be compelled to accept settlement. See Threshermens, 217 Wis. 2d at 462 (explaining that the statutory scheme "supersedes the employee's right to be 'made whole'"). Stated otherwise, § 102.29(1) abrogates the employee's common law claim against third parties and creates a statutory claim that differs so significantly from a common law negligence claim that the statutory claim does not have a counterpart at common law in 1848. Accordingly, we refuse to interfere with § 102.29(1) by engrafting common-law principles on the comprehensive choices the legislature made. See Martinez v. Ashland Oil, Inc., 132 Wis. 2d 11, 16, 390 N.W.2d 72 (Ct. App. 1986) (concluding that the statutory directive for the distribution of proceeds was part of an overall statutory scheme that changed common law).

¶61 Having concluded that Adams does not have a constitutional right to a jury trial under Article I, Section 5 of the Wisconsin Constitution for the Wis. Stat. § 102.29(1) claim, we now turn to Adams' due process challenge.

---

[6] For example, the employee is not a necessary party when the payer of worker's compensation benefits makes a third party tort claim based on the employee's injury pursuant to Wis. Stat. § 102.29(1), even when the payer seeks compensation for the employee's pain and suffering. Threshermens Mut. Ins. Co. v. Page, 217 Wis. 2d 451, 462, 480, 577 N.W.2d 335 (1998).

E.  Due Process

¶62 Adams argues that the circuit court's order violated his procedural due process rights because he did not know why LWMMIC accepted Cincinnati's settlement offer and the court did not hold an evidentiary hearing at which he could present witnesses.

¶63 We reject Adams' first assertion out of hand. In a letter accompanying its motion to compel, of which Greenwald received a copy, LWMMIC explained that the "liability problems with [this] case," which had been thoroughly vetted at the recent summary judgment motion, caused it to accept the offer. LWMMIC "fear[ed] that a trial [would] result in a defense verdict," and preferred the certain recovery the settlement offer presented. At the motion hearing, LWMMIC reiterated that it wished to accept settlement because the summary judgment hearing "laid bare" many deficiencies in Adams' case. Adams cannot reasonably contend that he did not know why LWMMIC wished to accept settlement, and we now turn to the type of hearing Adams believes is required.

¶64 Procedural due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Wisconsin Constitution protect against government actions that deprive an individual of life, liberty, or property without due process of the law. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of

such an interest <u>without due process of law</u>." <u>Casteel v. McCaughtry</u>, 176 Wis. 2d 571, 579, 500 N.W.2d 277 (1993) (quoting <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990)).

¶65 We employ a two-step analysis to determine whether there has been a violation of procedural due process. First, we ask "whether there exists a[n] . . . interest which has been interfered with by the State"; second, we examine "whether the procedures attendant upon that deprivation were constitutionally sufficient." <u>Id.</u> (quoting <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989)).

¶66 The interest at stake in this case is Adams' statutory claim against Northland and its insurer. Because it is Wis. Stat. § 102.29(1), and not the constitution or the common law that gives rise to and defines Adams' claim, his interest is coterminous with the statutory claim. <u>See</u> <u>Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972) (explaining that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law"). Adams' interest is the right, together with LWMMIC, to prosecute a claim against a third party, subject to judicial resolution of disputes on which the two cannot agree.

¶67 Since Adams' interest is created by statute, and that statute limits the right by providing a mechanism for resolving disputes, Adams cannot complain that the resolution mechanism violates due process. Judicial resolution of disputes is a "built-in" feature of the claim Wis. Stat. § 102.29(1) creates,

27

not a procedure for depriving Adams of a common law or constitutional right.  That the legislature selected judicial resolution as the mechanism for balancing (and therefore limiting) an employee's right to proceed against a third party, rather than a statute of limitations or an assignment as other states have done, is immaterial.  See, e.g., Md. Code Ann., Lab. & Empl. § 9-902 (West 2014) (employer has the exclusive right to bring an action against a third party for two months after the worker's compensation award, after which the employee may do so); Okla. Stat. tit. 85, § 348 (2013) (an employee who elects to take worker's compensation benefits assigns any claim against a third party to the employer).  Because Adams' interest was subject to the limitation he challenges, he has not been deprived of any constitutionally protected interest; therefore, we do not reach the second step of our analysis.  See Casteel, 176 Wis. 2d at 579.

### F.  Erroneous Exercise of Discretion

¶68 Adams' final argument is that the circuit court's order constituted an erroneous exercise of discretion.  Adams faults the circuit court for:  (1) not applying a legal standard; (2) not holding an evidentiary hearing at which he could have presented live witness testimony that would have demonstrated the strength of his case; and (3) failing to use a rational process to reach a reasonable conclusion.

¶69 We begin with Adams' contention regarding a legal standard for compelling an employee to accept settlement.  The statute gives only the following directive to circuit courts

28

faced with a motion to compel: The employee and compensation insurer "[e]ach shall have an equal voice in the prosecution of the claim, and any disputes arising shall be passed upon by the court before whom the case is pending." Wis. Stat. § 102.29(1)(b). As the circuit court recognized, this does not constitute "a great deal of guidance" from the legislature as to "how [a] court should deal with these matters."

¶70 The legislature's decision not to provide a more precise standard should not be held against the circuit court. Yet by arguing that the circuit court did not apply a precise legal standard, this is what Adams does.

¶71 Adams contends that a court cannot compel an employee to accept settlement unless the settlement offer is in the best interests of the employee. Adams appears to import this standard from settlements involving minors that also require court approval. See Wis. Stat. § 807.10. We reject such a standard because unlike children, who "are the special objects of the solicitude of the courts" and are "entitled to most jealous care," employees occupy no such position under the law. Jensen v. McPherson, 2002 WI App 298, ¶11, 258 Wis. 2d 962, 655 N.W.2d 487 (quoting Brandt v. Brandt, 161 Wis. 2d 784, 788-89, 468 N.W.2d 769 (Ct. App. 1991) (further citations omitted)).

¶72 Employees have the same right as a compensation insurer to bring a claim under Wis. Stat. § 102.29(1) and an equal voice in the prosecution thereof. Therefore, we conclude that the standard a circuit court should employ when deciding whether to compel a party to accept settlement is one that

29

evaluates whether the settlement is reasonably fair to both parties. Fairness, rather than a best interest standard, is more in keeping with the language of the statute, which does not favor either person entitled to bring the claim. It also echoes the standard under federal law for approving a class action settlement, which requires that the settlement offer be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The federal standard is persuasive because class actions raise concerns similar to Adams' about compelling a litigant to accept settlement. See generally Ortiz v. Fibreboard Corp., 527 U.S. 815, 845-46 (1999) ("the certification of a mandatory class followed by settlement of its action for money damages obviously implicates the Seventh Amendment jury trial rights of absent class members"). We now turn to the process of determining whether a settlement offer is fair.

¶73 Settlement decisions are the product of variables that are difficult to quantify and compare. These include litigation costs, settlement costs, stakes in the case, and likelihood of success at trial. Richard A. Posner, An Economic Approach to Legal Procedure and Judicial Administration, 2 J. Legal Stud. 399, 417-29 (1973). This case aptly demonstrates that professional estimations of these variables can vary greatly. The decision of a circuit court who has examined whether a settlement offer is reasonably fair to both parties therefore deserves wide latitude.

¶74 As a result of the briefing and thorough questioning on defendants' summary judgment motion, the disputed issues in

the present case were well defined for the circuit court before LWMMIC's motion to compel settlement. It appeared that Adams was going to have to submit evidence beyond what he submitted in opposition to the summary judgment motion in order to prove his case. Evidence that could squarely establish a safe level of tension for the springs, such as an industrial standard or expert testimony, seemed to be absent. At least at the point of the summary judgment motion, Adams appeared to rely on conclusory legal statements from a memo Greenwald prepared for Wozniak to prove negligence, rather than on evidence. While the court did not grant defendants' summary judgment motion, we agree with LWMMIC that the summary judgment motion exposed many of the deficiencies in Adams' case.

¶75 The circuit court also had the benefit of additional materials the parties submitted relating to the motion to compel settlement. These showed that, at least in the opinion of LWMMIC, problems with Adams' case had increased since the summary judgment proceeding. For example, additional testing had shown that the plow Adams was driving at the time of accident did trip, even at low speeds. Defendants' neurosurgeon was going to testify that Adams would not have sustained his injuries had he been wearing a seat belt, and defendants were arguing that the statutory limit on a reduction of damages for not wearing a seat belt did not apply.

¶76 Adams' response to LWMMIC's motion was that the circuit court was obligated to conduct an evidentiary hearing at which Adams could "present, through documentary evidence and

31

testimony of witnesses, that which he intended to prove [and] that which he could prove, in order to demonstrate that this proposed settlement was not in his best interests because his case was much stronger than what [the circuit court] opined."

¶77 Adams' suggestion of a mini-trial is not only unworkable, but it significantly lessens the value of the proposed settlement, i.e., stopping the accruing costs of litigation. "The very purpose of the compromise [by settlement] is to avoid the delay and expense of such a trial." Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir. 1982) (quoting Young v. Katz, 447 F.2d 431, 433 (5th Cir. 1971)). If a circuit court is not presented with enough information about the case to conclude that it would be fair to compel a party to accept settlement, the solution is to deny the motion, not to pre-try the case. See id. (quoting Young, 447 F.2d at 433) ("In determining the adequacy and reasonableness of the proposed settlement, . . . 'the court does not try the case'").

¶78 We also agree with LWMMIC that to the extent Adams "had some 'smoking gun' witness or testimony that he decided not to use in defending the summary judgment motion, such an argument runs contrary to the nature of contemporary pretrial procedure, the aim of which is to prevent trial by ambush and minimize surprises."

¶79 In addition to fleshing out liability disputes, the circuit court ordered the parties to prepare a breakdown of the distribution of any recovery under Wis. Stat. § 102.29(1). Under the statutory scheme, Adams would receive one-third of any

recovery remaining after deduction of reasonable costs of collection, which could include the attorney fees for both Adams' and LWMMIC's counsel, as well as his own attorney fees. § 102.29(1)(b)1. and (1)(c). LWMMIC would then be reimbursed up to the $148,332 it had already paid in compensation, plus amounts it "may be obligated to make in the future." § 102.29(1)(b)2. Any remainder, sometimes called a "cushion," would go to Adams. § 102.29(1)(b)3.

¶80 With the predicted distribution of recovery before him, the circuit court was able to further evaluate the settlement. That LWMMIC was willing to settle for roughly one-third of what it had already paid in compensation, leaving it unreimbursed for two-thirds of the amount it had already paid and for all future payments, may have demonstrated the sincerity of LWMMIC's concerns about Adams' case. That LWMMIC would be entitled to reimbursement for past and future compensation payments, which Greenwald acknowledged would be substantial given the nature and extent of Adams' injuries, could also inform the circuit court's assessment of the settlement offer. If Adams' future medical expenses were so substantial that he would be unlikely to receive any cushion, Adams' interest could be characterized as primarily in one-third of the recovery after deduction of costs.

¶81 Having defined the dispute, taken stock of the parties' positions, and considered matters that impact the fairness of the settlement offer to all plaintiffs, the circuit

court granted the motion to compel, explaining its decision as follows:

> I believe based upon the evidence submitted in support of and in opposition to the motion for summary judgment that the risk of a finding of no liability in this case exceeds the possibility of recovering something beyond $200,000, and for that reason the motion is granted.

We agree with the court of appeals that "[t]he circuit court's decision reflected a logical interpretation of the facts surrounding the settlement offer and consideration of the appropriate factors bearing on the decision," not an erroneous exercise of discretion. While the circuit court did not specifically say that it evaluated the settlement to determine whether it was reasonably fair to both parties, we are satisfied that the court thoroughly considered matters that bear on that standard. Accordingly, the decision of the court of appeals is affirmed.

### III. CONCLUSION

¶82 We conclude that a circuit court may compel an employee to accept settlement of the claim the legislature created in Wis. Stat. § 102.29(1). In such a claim, both the employee and the worker's compensation insurer share the right to sue third parties; the employee and the worker's compensation insurer have an equal voice in the prosecution of the claim; recovery from the claim is apportioned in the manner described in § 102.29(1)(b); and the circuit court is empowered to resolve any disputes arising between the employee and the worker's

compensation insurer during the prosecution of their claim, including those disputes involving settlement.

¶83 We also conclude that our interpretation of Wis. Stat. § 102.29(1) does not violate Adams' right to a jury trial because the claim § 102.29(1) creates is not the counterpart of a cause of action at law recognized at the time of the adoption of the Wisconsin Constitution. We further conclude that the circuit court's authority to compel an employee to accept settlement does not violate procedural due process because judicial resolution of disputes is part of the statutory claim. Lastly, we conclude that the circuit court appropriately exercised its discretion by defining the dispute, taking stock of the relative positions of the parties and considering matters that impacted the fairness of the settlement. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

35

¶84 ANN WALSH BRADLEY, J. *(dissenting).* The lynchpin of the majority's analysis lies in its unsupportable assertion that the common law right of the employee to bring a tort action against a negligent third party was abrogated by the enactment of Wis. Stat. § 102.29. Majority op., ¶27. Such an assertion unfortunately rewrites history, sub silencio overrules almost a century of well-settled precedent, and ignores the words of the statute.

¶85 I say "rewrites history," because an examination of the history reveals that it is the common law right of an employee to bring a tort action against the <u>employer</u> that was alone abrogated by the 1911 Worker's Compensation Act——not the common law right of an injured employee to bring a common law tort action against a negligent third party.

¶86 As this court pointedly stated in 1927, an examination of the legislative and statutory history of the worker's compensation law "leave[s] no doubt that the legislature intended to preserve the right to maintain an action in tort against any person, other than the employer, who is responsible for the acts causing injury to a workman." <u>Cermak v. Milwaukee Air Power Pump Co.</u>, 192 Wis. 44, 48, 211 N.W. 354 (1927).

¶87 I say "sub silencio overrules" because without even acknowledging its existence, the majority apparently overrules almost a century of our precedent that has clearly and repeatedly provided that the common law right to maintain a tort action against a negligent third party was unaffected by the enactment of Wis. Stat. § 102.29.

1

¶88 In 1915, this court stated "the law [the Worker's Compensation Act] does not attempt in any way to abridge the remedies which an employee of one person may have at law against a third person for a tort which such third person commits against him." Smale v. Wrought Washer Mfg. Co., 160 Wis. 331, 334, 151 N.W. 803 (1915) (emphasis supplied); see also Severin v. Luchinske, 271 Wis. 378, 383, 73 N.W. 2d 477 (1955) ("That remedy [a third party action] existed at common law and was neither enlarged nor impaired by enactment of sec. 102.29.").[1]

¶89 Finally, if the history and a century of precedent were not enough, the language of the statute expressly answers whether the enactment of the Worker's Compensation Act abrogated the right of the injured employee to bring a common law cause of action in tort against a negligent third party. It did not.

¶90 The statute expressly provides that the bringing of a worker's compensation claim "shall not affect the right of the employee, the employee's personal representative, or other person entitled to make claim or maintain an action in tort against any other party for such injury or death . . . ." Wis. Stat. § 102.29(1).

¶91 Under the majority's precarious analysis, it determines that because the injured employee's common law right to bring a tort action against a negligent third party has been abrogated by the Worker's Compensation Act, there is no right to a jury trial. Accordingly, it concludes that a court may compel an employee to settle a claim, but offers no meaningful guidance

---

[1] For additional cases see the discussion below.

2

on the standard or process to be used. Instead, it merely cautions circuit courts to be "fair." A standard of "fairness" provides no standard at all.

¶92 Contrary to the majority, I conclude that based on the history of the worker's compensation law, longstanding precedent, and the express language of the statute, the employee's common law cause of action against a third party tortfeasor was not abrogated by the Worker's Compensation Act. Because an employee's common law cause of action against a third party tortfeasor preexisted the Wisconsin Constitution and continues to this day, the Wisconsin Constitution requires that the right to a jury trial apply to such a claim. Accordingly, I conclude that the court cannot compel settlement here, and I respectfully dissent.

I

¶93 The majority's analysis of whether Adams has a right to a jury trial is misguided from the beginning. It introduces the issue as whether there is a right to a jury trial for a statutory claim and then frames its analysis as whether the claim created by Wis. Stat. § 102.29(1) is the counterpart of a cause of action at law that was recognized at the time of the adoption of the Wisconsin Constitution. Majority op., ¶¶5, 48, 57 (emphasis supplied). However, this is not the issue. The issue is whether a litigant had a right to sue a third party tortfeasor at common law for a work-related injury.

¶94 Article I, section 5 of the Wisconsin Constitution protects the right to a trial by jury. It provides: "The right

3

of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." Wis. Const. Art. I, §5. "This section clearly indicates that non-statutory causes of action at law, where the jury trial was guaranteed before the passage of the state constitution, would continue to have a guaranteed right to a jury trial attached even after the passage of the constitution." Vill. Food & Liquor Mart v. H & S Petroleum, Inc., 2002 WI 92, ¶10, 254 Wis. 2d 478, 647 N.W.2d 177 (emphasis in original). Thus, if a litigant files suit based on a common law cause of action, and the right to a jury trial for that cause of action preceded the passage of the state constitution, the litigant has a constitutional right to a jury trial.

¶95 The common law right of an individual to seek redress for an injury caused by another has existed for centuries. As far back as 1768, Blackstone discussed personal actions "whereby a man claims satisfaction in damages for some injury done to his person or property." Sir William Blackstone, 3 Commentaries on the Laws of England 117 (1768).[2] Blackstone referred to such actions as "trespass upon the case," and noted that such cases were assessed by a jury. Id. at 122, 273-74. As the majority acknowledges, "trespass on the case" is the ancestor of the present day action for negligence. Majority op., ¶56 (quoting Mueller v. Brunn, 105 Wis. 2d 171, 180, 313 N.W.2d 790 (1982)).

---

[2] When ascertaining whether a cause of action existed in 1848, we often resort to Sir William Blackstone's Commentaries on the Laws of England (1778). State v. Abbott Labs., 2012 WI 62, ¶34, 341 Wis. 2d 510, 816 N.W.2d 145.

4

¶96 Actions at common law, such as negligence, are not easily abrogated by statute. It has long been established that "[s]tatutes are not to be construed as changing the common law unless the purpose to effect such change is clearly expressed therein. To have such effect 'the language [of the statute] must be clear, unambiguous and peremptory.'" Maxey v. Redevelopment Authority of Racine, 94 Wis. 2d 375, 399, 288 N.W.2d 794 (1980) (quoting Wisconsin Bridge & Iron Co. v. Industrial Comm., 233 Wis. 467, 474, 290 N.W. 199 (1940)).

¶97 Because the common law right of an employee to seek redress from a third party tortfeasor is a right preceding the Wisconsin Constitution, it cannot be abrogated absent clear, unambiguous, peremptory statutory language. As discussed below, there is nothing in the history of the Worker's Compensation Act, this court's interpretation of it, or the Act's plain language to indicate that it was intended to perempt the common law right to maintain an action against a third party tortfeasor.

## A. History

¶98 Wisconsin has played a significant role in the history of worker's compensation law in this country. On May 3, 1911, Wisconsin became the first state in the nation to pass a broad, constitutionally valid worker's compensation law. Borgnis v. Falk Co., 147 Wis. 327, 133 N.W. 209 (1911); Joseph A. Ranney, Trusting Nothing to Providence: A History of Wisconsin's Legal System 344 (1999). In response, Employers Mutual Insurance Company of Wausau was formed and established in a one-room

5

office above a cigar store in downtown Wausau. On September 2, 1911, one day after the law became effective, it issued the nation's first constitutionally valid worker's compensation policy. Soon thereafter worker's compensation legislation became effective in nine other states.[3]

¶99 The Wisconsin Industrial Commission was created also as a result of the passage of the worker's compensation legislation. Its first chair was Charles Crownhart who subsequently served as a justice on the Wisconsin Supreme Court. No doubt his knowledge and experience illumined some of the early worker's compensation decisions of this court——decisions that are sub silencio being overruled by the majority's holding today.

¶100 Prior to 1911 employees had the right to sue their employers at common law but often lost because of common law defenses. Robert Asher, "The 1911 Wisconsin Workmen's Compensation Law: A Study in Conservative Labor Reform," Wisconsin Magazine of History, Vol. 57 at 125 (1973). There was no recovery against an employer if it was determined that the employee assumed the risk, the employee was negligent in any way, or the injury occurred because of the negligence of a fellow employee. However, if the employee was successful, there was no limit on the amount the employee could recover. Id.;

---

[3] Nevada, New Jersey, California, Washington, Kansas, New Hampshire, Ohio, Illinois, and Massachusetts. Gregory Krohm, Workers' Compensation: Wisconsin Pioneers the Nation's First Constitutional Worker's Compensation Law (July 2011), available at www.wipps.org/media/docs/2010_Krohm_History_WC-July-2011.doc.

Robert W. Ozanne, The Labor Movement in Wisconsin: A History 125-26 (1984).

¶101 The Worker's Compensation Act was passed as a compromise between the employer's and employee's interests. Employers lost their common law defenses, trading them for a no fault system under which employees were obliged to accept a limited and scheduled amount. Mulder v. Acme-Cleveland Corp., 95 Wis. 2d 173, 180, 290 N.W.2d 276 (1980).

¶102 The abrogation of common law claims against employers in the Worker's Compensation Act did not extend to common law claims against third party tortfeasors. When it was first enacted in 1911, the Worker's Compensation Act provided that making a claim for compensation under the law would "act as an assignment of any cause of action in tort which the employee or his personal representative may have against any other party." §1, ch. 50, Laws of 1911.

¶103 An amendment to the Worker's Compensation Act in 1913 provided that the making of a claim by an employee against a third party "shall operate as a waiver of any claim for compensation." §1, ch. 599, Laws of 1913. Although the law allowed an employee to assign the employee's common law tort claim and elect to either pursue a tort claim against a third party or a claim for worker's compensation, it did not eliminate the common law right to sue a third party tortfeasor.

¶104 Even though the common law right to sue a third party remained, most employees chose the worker's compensation claim and few employers exercised their assignment rights. Robert L.

7

Millender, <u>Expanding Employees' Remedies and Third Party Actions</u>, 17 Clev. St. L. Rev. 32, 33 (1968). This left the third party tortfeasor with "a windfall." <u>Id.</u> Although there was justification to remove tort liability from an employer because the employer was liable regardless of fault under the Worker's Compensation Act, the third party tortfeasor gave up nothing and ended up with the equivalent of immunity due to employers' reluctance to sue. <u>Id.</u>

¶105 Accordingly, in 1931 the Worker's Compensation Act was amended to eliminate the requirement that an employee select between a common law tort claim against a third party tortfeasor and a worker's compensation claim. Drafting file for ch. 132, Laws of 1931, Legislative Reference Bureau, Madison, Wis. ("The third party liability is to be changed so that an injured workman may in all cases claim compensation without surrendering his right to sue a third party."). The new language provided:

> The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employe shall not affect the right of the employe or his personal representative to make a claim or maintain an action in tort against any other party for such injury or death, but the employer or his insurer shall be entitled to reasonable notice and an opportunity to join in such action.

§2, ch. 132, Laws of 1931. Despite slight amendments to the law since 1931, it continues to this day to protect the employee's common law right to make a claim against a third party tortfeasor. Wis. Stat. § 102.29(1).

B. Century of Precedent

¶106 Consistent with its history, courts have repeatedly recognized that the Worker's Compensation Act does not impair an employee's common law right to maintain a tort action against a third party tortfeasor. Almost one hundred years ago, the Wisconsin Supreme Court succinctly expressed the law which should be guiding the majority today: "The law does not attempt in any way to abridge the remedies which an employee of one person may have at law against a third person for a tort which such third person commits against him." Smale, 160 Wis. at 334.

¶107 Likewise, in Cermak, 192 Wis. at 47, the court, interpreting an early version of the statute, stated "[t]he workmen's compensation act clearly evidences a legislative intent that the payment of compensation by an employer shall not relieve the one whose tortious act caused this injury from liability therefor. This intent is shown by sec. 102.29, Stats., which carefully preserves the right to maintain an action in tort against such other person whose acts caused the injury."[4]

¶108 The court explained that although receiving worker's compensation benefits "operates as an assignment of any cause of action in tort," that assignment "is merely for the purpose of repaying to the employer the amount of the compensation paid the injured employee." Id. at 47-48. Accordingly, it concluded

---

[4] The dissent in Cermak also agreed with this interpretation, stating "[t]here exists no doubt in my mind that the workmen's compensation act preserves to the injured workman . . . such cause of action as may exist at common law against a third person." Cermak v. Milwaukee Air Power Pump Co., 192 Wis. 44, 51, 211 N.W. 354 (1927) (Rosenberry, J. dissenting).

that the provisions of the Worker's Compensation Act "leave no doubt that the legislature intended to preserve the right to maintain an action in tort against any person, other than the employer, who is responsible for the acts causing injury to a workman." Id. at 48.

¶109 After the 1931 amendment to the Worker's Compensation Act, courts continued to recognize that it did not impair an employee's common law right to maintain a tort action against a third party tortfeasor:

> The fact that sec. 102.29, Stats., appears in the chapter entitled "Workmen's Compensation" does not change the character of the action brought against a third party, which as we have said, is one at law founded in tort. There is nothing in the Workmen's Compensation Law which discloses a legislative purpose of creating a new remedy for an injury to an employee caused by the negligent act of a third party. That remedy existed at common law and was neither enlarged nor impaired by enactment of sec. 102.29.

Severin, 271 Wis. at 383; see also Employers Mut. Liability Ins. Co. v. De Bruin, 271 Wis. 412, 415, 73 N.W.2d 479 (1955) ("The cause of action is one at common law; the fact that it is recognized in a section of the Workmen's Compensation Law does not change the fact that [the tortfeasor's] liability is based upon his wrongful acts.").

¶110 The court expressed similar sentiments in McGonigle v. Gryphan, 201 Wis. 269, 272, 229 N.W. 81 (1930) ("[I]t is clear from a consideration of the whole act that it did not affect rights of action which existed under the common law in any cases except those in which the parties involved sustained toward each other the relationship of employer and employee.").

10

¶111 Wisconsin is not alone in interpreting its worker's compensation law as preserving the common law right of an employee to sue a third party tortfeasor. Other states have likewise determined that their worker's compensation laws do not abrogate the common law right to maintain an action against a third party tortfeasor. See, e.g., Runcorn v. Shearer Lumber Prods., 690 P.2d 324, 328 (Idaho 1984) ("the workmen's compensation law does not disturb the injured employee's right to sue a third party for 'legal liability to pay damages'"); County of San Diego v. Sanfax Corp., 568 P.2d 363, 367-68 (Cal. 1977) ("The workers compensation statutes governing employer and employee actions against third parties do not define the substantive law which determines whether an employee or an employer will in fact recover. Instead, the substantive law which governs . . . is usually the general tort law."); St. Paul Fire & Marine Ins. Co. v. Wood, 416 S.W.2d 322, 327 (Ark. 1967) ("[The worker's compensation law] recognizes the employee's common law tort action against third persons."); Keener Oil & Gas Co. v. Bushong, 56 P.2d 819, 821 (Okla. 1936) ("There is nothing whatever in the [Worker's Compensation] act under which it may be claimed there was a purpose or attempt to limit, modify, or cancel the common-law liability of a third party for his tortious injury of a workman.").

C.   Language of the Statute

¶112 This precedent is consistent with the plain language of the statute. It expressly provides that the making of a claim for compensation against an employer shall not affect the

11

right of an employee to make a claim or maintain an action in tort against any other party. Wis. Stat. § 102.29(1)(a).

¶113 The statute states:

(a) The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employee shall not affect the right of the employee, the employee's personal representative, or other person entitled to bring action to make claim or maintain an action in tort against any other party for such injury or death, hereinafter referred to as a 3rd party. . . .

(b) . . . Each shall have an equal voice in the prosecution of the claim, and any disputes arising shall be passed upon by the court before whom the case is pending . . . .

Wis. Stat. § 102.29(1) (emphasis supplied).

¶114 Wisconsin Stat. § 102.29(1) should not be read as an abrogation of the common law right to a jury trial. As discussed above, statutes are not to be read as derogating the common law unless the legislative purpose to do so is clearly expressed in the language of the statute. Maxey, 94 Wis. 2d at 399. Such "legislative intent to change the common law must be expressed 'beyond any reasonable doubt.'" Kranzush v. Badger State Mut. Cas. Co., 103 Wis. 2d 56, 74, 307 N.W.2d 256 (1981) (citing Grube v. Moths, 56 Wis. 2d 424, 437, 202 N.W.2d 261 (1972); Burke v. Milwaukee & Suburban Transport Corp., 39 Wis. 2d 682, 690, 159 N.W.2d 700 (1968)). Thus, to accomplish a change in the common law, "the language [of the statute] must be clear, unambiguous, and peremptory." Maxey, 94 Wis. 2d at 399.

¶115 Although the juxtaposition of the phrase "any disputes arising shall be passed upon by the court," in subsection (1)(b)

12

with the above emphasized language in subsection (1)(a) may give rise to some uncertainty as to its meaning, it most certainly is not "clear, unambiguous, and peremptory," in limiting the longstanding right of an employee to a jury trial for injuries caused by a third party tortfeasor. Wisconsin Stat. § 102.29(1)(b) may give a court the ability to pass upon other disputes that arise during the prosecution of a case. However, it does not——beyond a reasonable doubt——permit a court to compel an employee to settle a claim against a third party tortfeasor, thereby forcing surrender of the employee's right to a jury trial. To the extent that Dalka v. Am. Family Mut. Ins. Co., 2011 WI App 90, 334 Wis. 2d 686, 799 N.W.2d 923, suggested otherwise, I conclude that it was in error.

¶116 Dalka involved an $8,500 settlement offer to the plaintiff where there were consolidated cases with different parties, multiple accidents, and disputes over the origin of the injury. In its 12-paragraph decision, the court of appeals determined that a court could force an employee to settle its third party worker's compensation claims. It based its analysis on Bergren v. Staples, 263 Wis. 477, 483-84, 57 N.W.2d 714 (1953). Dalka, 334 Wis. 2d 686, ¶10.

¶117 However, Bergren was decided in the context of an employee who was trying to force an employer to settle. As Bergren noted, unlike employees, employers do not have a common law right to an employee's claim for negligence against a third party. 263 Wis. at 482. The Dalka court failed to appreciate this distinction. Consequently, it did not conduct a thorough

13

analysis of the issue and is inconsistent with the history, case law, and express language of the statute discussed above.

¶118 In sum, the history and longstanding precedent, together with persuasive cases from other jurisdictions, as well as the language of the Worker's Compensation Act lead to the conclusion that an employee's common law cause of action against a third party tortfeasor was not abrogated by the Worker's Compensation Act. Because an employee's common law cause of action against a third party tortfeasor preexisted the Wisconsin Constitution and continues to this day, the Wisconsin Constitution requires that the right to a jury trial apply to such a claim. Thus, contrary to the majority, I conclude that there is a right to a jury trial for a common law cause of action brought by an employee against a third party tortfeasor.

II

¶119 The majority compounds its problematic analysis by failing to give any meaningful guidance on what standards or procedures should be applied in implementing its erroneous conclusion.

¶120 Here, after the League of Wisconsin Municipalities Mutual Insurance Company moved to compel settlement, Adams requested the opportunity to present evidence in support of his opposition to the motion. He specifically identified witnesses he would present in support of his argument that the case had more value than the settlement offer. The circuit court denied this request and made its determination to compel settlement

14

based on evidence previously entered in support of a summary judgment motion.

¶121 Prior to its ruling, the circuit court made a clear request for guidance on what standard to apply to determine whether to grant a motion to compel a settlement. It noted the worker's compensation statute did not indicate any procedure for it to follow in deciding disputes between parties:

> First of all, I want to say that the legislature hasn't given a great deal of guidance with respect to how the court should deal with these matters. The legislature has directed that where there is a dispute between two parties on how the case should be conducted and whether offers of settlement should be accepted, the statute imposes the duty to sort that out upon the court. But there's no – there's nothing that's been determined about how the court goes about that.

There is a good reason, however, why no guidance is set forth in the statute on what standards or procedures to employ when considering a motion to compel an employee to settle. As discussed above, such a motion which would deprive the employee of the right to a jury trial would be an anathema to the history, a century of precedent, and the express language of the statute.

¶122 The circuit court also noted a similar absence of guidance from the courts:

> And the only case that deals with this, which is only a few months ago, it was unfortunately a case where the amount in dispute was only about $8,700 and where the judge – trial court apparently dealt with it in a

15

rather cavalier fashion, and that doesn't give a great deal of guidance.[5]

¶123 I agree with the circuit court that the legislation and the caselaw offer little guidance on how to make these determinations. The statute merely states that "any disputes arising shall be passed upon by the court before whom the case is pending." Wis. Stat. § 102.29(1). Likewise, the sole case permitting a court to compel settlement noted only that the circuit court had determined that settlement was in the employee's best interest. Dalka, 334 Wis. 2d 686. It did not elaborate on what standard a circuit court should apply in making that decision and what evidence it should consider. Id., ¶3.

¶124 The standard set forth by the majority today provides even less guidance. It opines with scant explanation that "fairness" is a better standard than "best interest." Majority op., ¶72. Although the majority observes the three standards employed by the federal court when approving class action settlements (fairness, reasonableness, and adequacy), it chooses just one without apparent rhyme or reason. Id. The majority mandates that the standard a circuit court should employ when deciding whether to compel a party to accept settlement is one that evaluates whether the settlement is "fair." Id. Such a solo standard provides no standard at all.

---

[5] The case to which the circuit court was referring was Dalka v. Am. Family Mut. Ins. Co., 2011 WI App 90, 334 Wis. 2d 686, 799 N.W.2d 923.

16

¶125 Likewise, the majority offers little guidance on what process a circuit court is to use when making the determination of whether to grant a motion to compel settlement. Rather than stating what the procedure should be, the majority focuses on the procedure suggested by Adams, stating that a "mini-trial" is "unworkable." Id., ¶77.

¶126 The majority fails to acknowledge that in similar circumstances, this court has adopted a mini-trial to assess the value of a settlement. In Rimes v. State Farm Mut. Automobile Ins. Co., 106 Wis. 2d 263, 316 N.W.2d 348 (1982), the court considered what procedure should be used to determine whether a settlement between a plaintiff and a tortfeasor made the plaintiff whole such that a subrogated insurer could share in the recovery. It concluded that a mini-trial conducted by the circuit court was appropriate. Id. at 276-77. Since then, Rimes hearings have become the norm for determining whether a plaintiff has been made whole by a settlement. Schulte v. Frazin, 176 Wis. 2d 622, 629, 500 N.W.2d 305 (1993).

¶127 The two cases cited by the majority show that evidentiary hearings are also used by federal district courts in determining whether to approve class action settlements under Fed. Rule Civ. Pro. 23(e).[6] See Young v. Katz, 447 F.2d 431,

---

[6] Federal Rule Civ. Pro. 23(e) provides:

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

. . .

17

434-35 (5th Cir. 1971) (noting that the plaintiffs presented witness testimony and that the evidence presented by the objectors raised nothing of substance to contradict it); Parker v. Anderson, 667 F.2d 1204, 1210 (5th Cir. 1982) (noting the objectors' failure to introduce any evidence at the settlement hearing). The majority does not explain why Wisconsin circuit courts are unable to manage the same procedure as well as the federal courts.

¶128 Although the contours of the procedure the majority sets forth for the circuit courts are unclear, the inadequacy of its loose guidelines are illustrated by their application in this case. Here, the majority determines that it was permissible for the circuit court to compel settlement based solely on the evidence already before it. Adams' claim was terminated without him being able to present evidence in opposition to the motion to compel settlement. Such a procedure calls into question whether the court had an adequate basis for determining that the settlement was fair and raises due process concerns.

¶129 The majority is obligated to provide the circuit court and litigants with some direction on how a circuit court is to make a determination to compel settlement. Its standard of "fairness" is no standard at all. Absent any indication of what evidence the court is to consider and how that evidence is to

---

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

18

get before the court, the majority opinion shirks its responsibility.

III

¶130 In sum, the majority's approach to the right to a jury trial is misguided as it overlooks history, sub silencio overrules decades of cases, and ignores the words of the statute by assuming that an employee's right to pursue a cause of action against a third party tortfeasor comes from Wis. Stat. § 102.29(1), and not the common law. Under its precarious analysis the majority determines there is no right to a jury trial, and concludes that a circuit court may compel an employee to settle its claims.

¶131 Contrary to the majority, I conclude that the employee's common law cause of action against a third party tortfeasor was not abrogated by the Worker's Compensation Act. Because an employee's common law cause of action against a third party tortfeasor preexisted the Wisconsin Constitution and continues to this day, the Wisconsin Constitution requires that the right to a jury trial apply to such a claim. Accordingly, I conclude that the court cannot compel settlement here, and I respectfully dissent.

¶132 I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.