f 147.
ANNETTE KINGSLAND ZIEGLER, J.
(dissenting). No one disputes, for purposes of this appeal, that Dennis Teague's ("Teague") cousin, ATP, used the name "Dennis Antonio Teague" as an alias and that ATP, not Teague, has a criminal history. As to ATP, then, the Wisconsin Department of Justice's ("DOJ") criminal history database is absolutely correct. The database reflects that ATP used the name "Dennis Antonio Teague" as an alias. The database correctly reflects dates of birth not shared by Teague, an image that is not Teague's image, ATP's name as well as the alias names attributed to him, and ATP's criminal history. It is important, and seemingly accurate, to have that information available in the database as concerns ATP. The only common information between ATP and Teague is the name.
¶ 148. The problem occurs when Teague's name is searched, even with Teague's own date of birth (which is different than ATP's date of birth); ATP's record (with dates of birth attributed to ATP) appears, and ATP's record reflects that he used the name "Dennis Antonio Teague" as an alias. Teague wants this court to remedy the wrong that occurs to him when people might question whether it is he who has the criminal history. Teague is not without recourse. Teague and some members of this court want more. I do not blame them, but I cannot join this constitutional journey in search of a remedy, particularly when other relief has been made available, but is, according to Teague, unsatisfactory. The court leaves the circuit court with no guidance regarding an appropriate rem *531 edy. In addition, the issue of remedy might even be rendered moot given the DOJ's implementation of a new search system.
¶ 149. In reporting accurate facts as to ATP in its criminal history database, the DOJ provides a valuable service to those employers, businesses, and members of the general public who may want to know more about ATP or the alias he may be using at the moment. It is valuable information, for example, if ATP is posing to be Teague with ATP's date of birth, for those who search to be able to know that ATP, posing as Teague, has this criminal history. And if Teague were trying to prove that ATP has used his name as an alias, he would want that information to be available as well. The information in the database is not illegitimate.
¶ 150. The difficulty arises under these facts because Teague wants his good name to reflect just that. He apparently is not presently in need of proving that ATP has in fact used his name as an alias. In fact, if he found himself in that position, he would presumably want to use the database as proof that ATP has used his good name as an alias. While this database reflects accurate information as to ATP's alias, it is less than clear as to Teague's lack of criminal history, particularly if one does not heed the warnings in the database. In other words, if not read thoroughly, as the database warns to do, it could cause some to question whether Teague might have a criminal history. Teague finds unsatisfactory that those who are aggrieved by the results of a database search may obtain relief in the form of an official letter to demonstrate that it is not they who possess a criminal record. Teague did, in fact, receive such a letter but he nonetheless fears that it is not enough to exculpate him in the eyes of others. *532 I feel sorry for him and for those who find themselves in his position. The entire court feels sorry for Teague and those like him.
¶ 151. I depart from Justice Kelly's writing,[1] however, because the legislature is the body to weigh and consider the need for public access to this information with the fact that some innocent bystanders might be wronged by such access. Our own court has repeatedly faced similar difficult challenges to our own website by those who have been wronged by the information that is available. Our court has not seen fit to create the kind of remedies for those individuals that certain members of the court would create for Teague today. I can join these members of the court in their pitying Teague for what ATP did to him and the injustice that could occur if improper assumptions are made as to Teague. I, however, cannot join Justice Kelly's writing with its construction of a constitutional violation where none exists in order to avoid a bad outcome and its conclusion that the DOJ's publication of truthful, valuable information as to ATP deprives Teague of liberty under the state and federal constitutions.
¶ 152. As a preliminary, but fundamental, legal matter, the circuit court below, acting as factfinder, found that the "criminal history responses issued by the [DOJ] in response to name-based queries using the plaintiffs'] names and dates of birth . . . are not literally false and when taken as a whole and fairly and reasonably read do not convey a false and defamatory meaning to their intended audience."[2] We owe defer *533 ence to that determination. Unlike Justice Kelly's writing, I am unable to conclude that the circuit court's finding is clearly erroneous. Without such a conclusion, Teague's procedural due process claim fails from the outset. Accordingly, I respectfully dissent.[3]
H-H
¶ 153. Procedural due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Wisconsin Constitution *534 protect [s] against government actions that deprive an individual of life, liberty, or property without due process of the law." Adams v. Northland Equip. Co., 2014 WI 79, ¶ 64, 356 Wis. 2d 529, 850 N.W.2d 272. The procedural due process claim in this case requires the court to "determine first whether there exists a liberty interest of which [Teague] has been deprived, and if so, whether the procedures used to deprive that liberty interest were constitutionally sufficient." State v. Alger, 2015 WI 3, ¶ 39 n.15, 360 Wis. 2d 193, 858 N.W.2d 346 (quoting State v. West, 2011 WI 83, ¶ 83, 336 Wis. 2d 578, 800 N.W.2d 929).
¶ 154. Also as a fundamental legal principle, "A plaintiff may prove a deprivation of a liberty interest by showing damage to her 'good name, reputation, honor, or integrity,' Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971), but any stigmatic harm must take concrete forms and extend beyond mere reputa-tional interests." Omoseghon v. Wells, 335 F.3d 668, 675 (7th Cir. 2003) (citing Paul v. Davis, 424 U.S. 693, 711-12 (1976)). Put differently, "[essentially, a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1302 (11th Cir. 2001) (citing Paul, 424 U.S. at 701-02). In this case it is unnecessary to inquire into the existence of damage to "some more tangible interest" possessed by Teague because Teague has not even established the fact of reputational injury. I cannot ignore this important and jugular deficit.
f 155. I recognize that with regard to the issue of reputational injury, there is in fact little to be gained in *535 attempting to refute much of the reasoning in Justice Kelly's writing. Justice Kelly's writing may be quite right that if one ignores certain purposes a requester might have for entering Teague's information into the criminal history database, ignores the DOJ's thorough explanation, in the reports it provides, of the information it is actually providing, ignores details demonstrating that the record returned in response to a request is not Teague's own record (such as a name, image, and/or birthdate that do not correspond to Teague's own name, image, and/or birthdate), and instead focuses entirely, blinders on, upon the single fact that a name corresponding to Teague's own name appears somewhere in the criminal history report provided, then one might indeed accidentally conclude that Teague possesses a criminal history.
¶ 156. But that, obviously, is not how these criminal history reports are to be analyzed. See, e.g., Leuch v. Berger, 161 Wis. 564, 571, 155 N.W. 148 (1915) ("The words used must be construed in the plain and popular sense in which they would naturally be understood. And the words claimed to be libelous must be read in the light of the entire article." (citation omitted)). Begin with the requester's purpose. In one entirely conceivable scenario, a requester receives personal information from an individual and wishes to verify, through the criminal history database, whether that individual possesses a criminal history. If the individual is, for example, ATP using information stolen from Teague, the criminal history database will accurately notify the requester that the name the requester received has been used as an alias by the individual. The criminal history database has served its purpose.
*536 f 157. Under other circumstances, the individual who provided the personal information will be the individual himself—Teague, for example. But despite this eventuality, and for understandable public protection reasons, the DOJ may wish to maintain in its database the fact that ATP stole Teague's name. The DOJ therefore fully and carefully explains the nature of the results it provides to requesters. The following are just a few excerpts of the explanation the DOJ provides that are directly relevant to the facts of this case (emphases are in the original):
IMPORTANT EXPLANATION ABOUT HOW TO UNDERSTAND THIS RESPONSE
[[Image here]]

Read these sections carefully to understand how this response relates to the identifying data you provided.

[[Image here]]

You must carefully read the entire Wisconsin criminal history record below in order to determine whether the record pertains to the person in whom you are interested.

Do not just assume that the criminal history record below pertains to the person in whom you are interested.

[[Image here]]

It is not uncommon for criminal offenders to use alias or fraudulent names and false dates of birth, sometimes known as "identity theft."

If the name you submitted to be searched is DIFFERENT from the "Master Name" [a term defined elsewhere] below, the Wisconsin criminal history record *537 below may belong to someone other than the person whose name and other identifying data you submitted for searching. If an alias or fraudulent name used by the person who is the "Master Name" is similar to the name you submitted for searching, that does not mean that the person whose name you submitted for search has a criminal history. It means that the person associated by fingerprints with the Wisconsin criminal history below has used a name similar to the name you submitted for searching.
[[Image here]]
To determine whether the Wisconsin criminal history below actually belongs to the person whose name and other identifying information you submitted for searching, compare the information reported below to the other Information you have obtained about that person. Inconsistencies may indicate that the criminal history reported below does not belong to the person whose name and other identifying information you submitted for searching.
¶ 158. This is not "legalese." It is clear, unembel-lished English. And if a requester entering Teague's information reads and follows these unambiguous instructions, that person will know, for instance, to "compare the information reported" in ATP's criminal history "to the other information" the requester has "obtained about" Teague. The person will discover inconsistent names, birthdates, and perhaps even images. The criminal history database may not have proven very helpful to the requester, but it should not have harmed Teague.
¶ 159. In sum, it is a bit of an overstatement to conclude, in light of the foregoing, that the DOJ's "policy and practice . . . consistently and predictably calumnizes innocent people." Justice Kelly's writing, *538 ¶ 73. In fact, that conclusion is not really one for members of this court to make because first, we are not a fact-finding court and second, the factfinder below reached the opposite conclusion. In other words, one might argue that despite the explanation the DOJ provides, and even considering the context in which a criminal history report is requested, a requester may still read one of the DOJ's criminal history reports to ascribe a criminal background to an individual who does not possess one. This is precisely why the question of the defamatory nature or not of the criminal history reports at issue was submitted to a factfinder below.
¶ 160. Specifically, the circuit court concluded, in its findings of fact, that the "criminal history responses issued by the [DOJ] in response to name-based queries using the plaintiff[s'] names and dates of birth . . . are not literally false and when taken as a whole and fairly and reasonably read do not convey a false and defamatory meaning to their intended audience." That finding is not clearly erroneous, and Teague's procedural due process claim therefore fails. The DOJ has not defamed Teague. It reports, for the benefit of the public and others, the truthful (for purpose of this appeal) fact that ATP has used the name "Dennis Antonio Teague" as an alias. At bottom, the analysis in Justice Kelly's writing rests on fears that requesters are either unable or unwilling to follow the basic instructions the DOJ gives them in the reports it provides. However, the factfinder considered this possibility and rejected it. I would not upset the circuit court's findings. Moreover, Justice Kelly's writing leaves the circuit court to create a remedy and provides it with no guidance whatsoever as to what that might be. Additionally, the other litigants have separate concerns but Justice Kelly's *539 writing similarly provides the circuit court with absolutely no guidance as to what their remedies may be. The DOJ has referenced a new system that will be or has now been implemented. Perhaps that will provide the process that members of this court now believe is due.
H-( I—i
¶ 161. This case is all the more concerning because of how it may be used in the future. Justice Kelly's writing casts doubt on the validity of a host of government-run databases similar to the one at issue here. A good example is the Wisconsin Circuit Court Access ("WCCA") system, a database that "provides access to certain public records of the Wisconsin circuit courts."[4] One need provide only a name to gain access to court-related information potentially associated with that name, including records of criminal convictions.
¶ 162. This court has been less than receptive to requests of individuals who have claimed to be victimized by the way WCCA information is maintained. The court has fallen far short of finding a due process violation. On June 30, 2009, the Board of Governors of the State Bar of Wisconsin submitted a petition to modify the Supreme Court Rules, explaining:
As this Court is aware, [WCCA] can be reviewed by anyone with internet access and the information contained on the website is regularly misused. [WCCA] publishes the original criminal case information regardless of the outcome of the case. ... To allow continued access to such easily misunderstood infor *540 mation, especially in cases in which the case was dismissed or there was a judgment of acquittal, poses the risk that such a record could be "a vehicle for improper purposes," whether intentional or not.
In re Petition of the State Bar of Wisconsin to Modify Chapter 72 of the Supreme Court Rules, Petition 09-07 at 11-12 (quoting Nixon v. Warner Commc 'ns, Inc., 435 U.S. 589, 598 (1978)), https://www.wicourts.gov/ supreme/docs/0907petition.pdf. Although the court's own website has produced its own victims, the court does not even provide a letter as relief to those aggrieved. On July 19, 2016, this court dismissed the petition. S. Ct. Order 09-07 (issued Jul. 19, 2016), https://www.wicourts.gov/sc/rulhear/DisplayDocument. pdf?content=pdf&seqNo=172234.
1 163. It seems, then, that members of this court are holding the DOJ to a stricter standard when it comes to the maintenance of the type of information at issue than it does the Wisconsin Court System. One wonders how WCCA, and other databases like it, might fare given the constitutional relief Justice Kelly's writing seeks to provide today.
J—l 1—1 1—1
¶ 164. Members of the court are not wrong to wish that there was a remedy for Teague that could address all possible scenarios, but Justice Kelly's writing unfortunately errs in concluding that the DOJ unconstitutionally deprived Teague of liberty. I would uphold the finding of the circuit court below and conclude that Teague has not established that the DOJ defamed him. The information in the database is correct. It is unfortunate that Teague's name has been used as an alias. Nonetheless, Teague's procedural due *541 process claim must fail. This court should not insert itself further into a dispute that is best resolved, if need be, by the legislature.
¶ 165. For the foregoing reasons, I respectfully dissent.

 Given the votes of my colleagues, I refer to the writing's author specifically in order to provide clarity.

 Although the term "defamation" has been used in Justice Kelly's writing, I note that the term has a unique definition *533 under the law. See, e.g., Wis JI-Civil 2500. Although I will use this terminology, I do not necessarily mean to conclude that this is indeed a defamation claim.

 Like Justice Kelly's writing and the court of appeals, I address only Teague's circumstances, not those of the intervening plaintiffs. While the petitioners do not face identical scenarios, the reasoning in this writing applies equally to each of them. For instance, the criminal history report of the individual who apparently stole petitioner L.C.'s name lists a birth date that in fact corresponds to L.C.'s birth date. But numerous other aspects of the criminal history report make clear that the report does not belong to L.C.
In addition to Teague's procedural due process claim, Justice Kelly's writing also discusses the application of Wis. Stat. § 19.70 to this case. However, the writing ultimately appears to reject this statute as the primary avenue of relief. The circuit court below concluded both that Teague could not challenge the information in the database because it pertained to ATP rather than Teague and that even if the criminal history report at issue is a record, it is not kept by the authority and thus is "not a record that Teague can challenge or with which his challenge can be filed." The court of appeals below rejected the matter as undeveloped. See Teague v. Van Hollen, 2016 WI App 20, ¶¶ 71-76, 367 Wis. 2d 547, 877 N.W.2d 379 (Higginbotham, J., concurring); id., ¶ 79 (Sherman, J., concurring).
Even my colleagues who would grant relief under Wis. Stat. § 19.70 do not agree on what that relief should be and who should provide it. As a result, I need not address the issue. I also decline to address the other claims Teague has raised.

 Wisconsin Circuit Court Access, https://wcca.wicourts. gov (last visited March 19, 2017).